BOARD OF DIRECTORS OF GOULD SPECIAL SCHOOL DISTRICT *v.*
HOLDTORFF.

Opinion delivered July 5, 1926.

1. SCHOOLS AND SCHOOL DISTRICTS—TRANSPORTATION OF CHILDREN.—
Crawford & Moses' Dig., § 9060, empowering school districts to
provide transportation for schoolchildren, does not authorize
a contract for transportation of the children of one district to
the schools of another district, or to use the school funds to pay
tuition in the school of another district.

2. SCHOOLS AND SCHOOL DISTRICTS—RATIFICATION OF UNAUTHORIZED
CONTRACT.—A contract of a school district for the transportation
of pupils to the schools of another district and for payment of their
tuition therein, being unauthorized under Crawford & Moses'
Dig., § 9060, cannot be ratified by performance.

Appeal from Lincoln Chancery Court; *H. R. Lucas,*
Chancellor; affirmed.

*Mike Danaher* and *Palmer Danaher,* for appellant.
*W. B. Sorrels,* for appellee.

SMITH, J.  In this case appellee, who is a citizen and
taxpayer residing in Gould Special School District and
a patron of the public school of that district, brought suit
against the directors of the school district to enjoin them
from paying T. H. Free the sum of $50 per month, which
the said school district had contracted to pay Free for
transporting children residing in the Gould Special
School District to a school in another district.  There was
a prayer also for the recovery of money already paid
under the contract.

W. E. Massey was the only witness who testified in
the case, and he was one of the directors of the Gould
Special School District, and his testimony was to the fol-
lowing effect:  At a meeting of the school board on May
16, 1923, a resolution was passed authorizing a contract
to be made with T. H. Free, who was also a school direc-
tor, to transport certain children residing in the Gould
Special School District to the Grady School District.
The resolution recited that Free's children were suffi-
ciently advanced to study music and expression, and that
these subjects were not taught in the Gould Special

School District. Out of this allowance of $50 per month Free was to pay the tuition of his own children and that of any and all other children who might be transported to and attend the Grady school.

The contract was performed for that school year, and on May 5, 1924, by a second resolution of the board of directors, the contract was renewed for another year. The suit was brought to enjoin the payment of money under this contract and to recover what had been paid under both contracts.

Mr. Massey testified that Free resided in the western end of the Gould Special School District, and that neighborhood was eight miles from school, and that, for a number of years, a school had been taught in Free's neighborhood at a cost to the district of $75 per month for teacher's salary and an expense of from five to ten dollars per month for other purposes, and the contract with Free was regarded as advantageous to the school district because it enabled the district to close that school and to effect a saving of about $35 per month by so doing. The school at Gould was crowded, and, by sending the children in the Free neighborhood to Grady, the congested condition at the Gould school was relieved to that extent. The Free neighborhood was eight miles from Gould, and the same distance from Grady, and this distance was so great that the children in that neighborhood could not attend either school unless transportation were furnished. When the contract was first entered into there were seven or eight children transported under the contract, but this number had decreased until there were only four children of Mr. Free to be transported.

The court enjoined the further performance of the contract, and rendered judgment against Free for the sums paid under the contract, and this appeal is from that decree.

The case of *Hendrix* v. *Morris,* 127 Ark. 222, 191 S. W. 949, was a suit by a taxpayer in the England Special School District to enjoin the payment of the operating expenses of an automobile to carry schoolchildren to the

school. We there reviewed act 116 of the Public Acts of 1911, page 81, § 15 of which provides "that the board of directors shall have power to provide such transportation for the pupils of the district as the board may deem advisable, and may purchase, rent or hire conveyances for this purpose, or the board of directors may enter into contracts with others for transportation service," etc., and that "the cost of this transportation shall be paid out of the school funds to the credit of the consolidated school district."

The England Special School District was not a consolidated school district, and it was held, for that reason, that the provisions of the statute quoted did not apply, and, inasmuch as there was no statutory authority for transporting the children to school at the expense of the school district, the contract to that effect was enjoined.

In reaching that conclusion it was said: "Cases on this subject are collected in a note to the case of *Shanklin* v. *Boyd*, 38 L. R. A. (N. S.) 710. In the case cited the Supreme Court of Kentucky held that a vote of the tax 'for local purposes' did not authorize the school directors, who were operating under a school law not materially different from our own, as far as the powers of the directors are concerned, to expend money for the purpose of conveying children to the schools of the district. The court expressly stated that it did not hold the Legislature might not provide for the levying of a tax for this purpose, but that it did hold that the revenues could not be so employed in the absence of a statute authorizing it. We think the reasoning of that case is applicable to the facts of this. The Legislature has enumerated the purposes for which the revenues may be spent, and, as no authority is given to expend money in the transportation of children, we must hold that no such authority exists."

After the opinion in that case was rendered, the General Assembly, at its regular 1919 session, passed an act entitled, "An act to authorize special, consolidated, and common school districts to expend public school revenues for transportation facilities, and for other purposes."

Section 1 of this act (which appears as § 9060, C. & M. Digest) reads as follows: "The board of directors of all special school districts in cities and towns, in all consolidated districts, in all common districts, and in all rural special, or single school districts, heretofore created or which may be hereafter created, be and they are authorized and empowered to purchase, or otherwise provide when desired, means for transporting pupils to and from school, and to this end they may hire or purchase such school wagons, or busses, or other means of transportation, and hire persons to operate them, or make such other arrangements as may be deemed necessary for carrying out the purposes of this act; and said board are empowered to buy, lease or build teacherages or homes and to select suitable sites for same for the use of the teachers in the regular employ of the district, in such way and under such regulations as they may deem proper, and to pay for all such property or services out of any funds that may accrue to the district."

By this act the power was conferred on all school districts—which, prior thereto, only consolidated districts possessed—"to purchase, or otherwise provide when desired, means for transporting pupils to and from school," and to that end conferred power on the directors to hire or purchase school wagons, or busses or other means of transportation, and to hire persons to operate them, or to make such other arrangements, as may be deemed necessary to carry out the purposes of the act.

But it is quite obvious that the legislative purpose was to provide means for the transportation of the children of any particular district to the schools of that district. The act says nothing about transporting the children of one district to the schools of another district, nor is any authority conferred to use the school funds to pay tuition in the schools of another district.

No authority was conferred by the act of 1919 to make such a contract as was made with Free, nor does such authority otherwise exist, and, as the directors were without authority to make the contract, it has not been

ratified by its performance. *First National Bank of Waldron* v. *Whisenhunt,* 94 Ark. 583, 127 S. W. 968.

The court below was correct therefore in enjoining the further performance of the contract and in rendering judgment for the recovery of the money paid, and the decree to that effect is affirmed.