Woodlawn School District No. 6 *v.* Brown.

4-8951                                   223 S. W. 2d 818

Opinion delivered October 31, 1949.

*DuVal L. Purkins,* for appellant.

Frank G. Smith, J. Appellees who are residents and taxpayers within Woodlawn School District No. 6 of Cleveland County, filed a complaint containing the following allegations. Woodlawn district school is situated on State Highway No. 15, 2 miles north of Calmer in Cleveland County with which highway a number of public roads connect—some improved, others not. Their children attend this school and buses are used to transport the school children from their homes to the school, and from the school back to their homes. There are among numerous others three public roads intersecting Highway 15, one at Pansey, and another county road running west from Rye connecting with Highway 15 at that point. Pupils are not picked up and discharged on these roads, nor on another county road running west from Friendship Church, connecting with Highway 15; that 50 pupils living on the 3 county roads mentioned are forced

to walk for from a short distance to as much as two miles from their homes to Highway 15 to receive bus transportation. This constitutes a gross discrimination against the children living on those roads which the school directors have been asked to correct, but which they have not done. It was prayed that a writ of mandamus issue, compelling the district to furnish bus transportation to the pupils living on the three roads wherein discrimination is alleged to exist.

The state's educational policy of abolishing small school districts and consolidating them into larger ones has resulted in the organization of Woodlawn School District No. 6 of Cleveland County, which covers the eastern part of that county. The district extends from Jefferson County line on the north to the Saline River and the Bradley County line on the south, a distance of 35 miles, and varies in its width from 3 to 5 miles. There are both white and negro children in the district, and it is attempted to furnish equal accommodations to the children of those races, and the case presents no question of discrimination in that respect.

The average daily attendance of the white pupils at the schools is from 444 to 450, and 92% of the children are transported daily to and from the school. For this purpose the district operates 5 school buses, carrying an average of 90 children per load, and under the schedule of their operation no child must leave home before daylight or arrive at home, upon returning from school, after nightfall.

It is difficult to understand the testimony as to the location of the homes of the complaining parties and others, even with the aid of a map, which the witnesses had before them when testifying, and impossible to do so without it.

Upon rendering judgment the court said: "Gentlemen, the Court is going to hold this, that it has no power to control the discretion of the Board of the School's Superintendent in determining the schedule of its routes; that this Board has made splendid progress in the development of this school district; but in doing that it has

developed transportation on certain parts of the district faster than it has on others, and the others or some of it with as good physical road condition as that part upon which it is now furnishing transportation for the children to the homes; that it is financially impossible for the district at this time to purchase another bus whereby it could give transportation to all of the children in the district over which a bus could physically traverse; that there is an unintentional discrimination between some of the pupils and I am going to grant the petition effective the first day of the fall term of school next fall giving the Board that length of time to provide another bus over the district over which the bus can travel.''

That recital was incorporated in the judgment which directed the district to provide another bus to improve the service.

The testimony fully sustains the finding that the district was not financially able to give better service, and shows that this could not be done without shortening the school term. The district operates 5 buses for white pupils, one of which is not paid for, and it is contemplated with anticipated state aid to acquire another bus when better service can be supplied.

The court was eminently correct in holding that it was without power to control the discretion of the school board in preparing the bus schedules, and disclaimed any intention of doing so, yet such is the effect of the order from which is this appeal. The court found, and the testimony supports the finding, that equal service was not being afforded to all the children of the district, but that this was unintentional. It might be added that the undisputed testimony shows this was unavoidable.

The greatest inequality of service appears in the case of patrons living in the south end of the district, whose children must walk from one to two miles to the bus stop, and then ride daily 16 or 17 miles on a bus to the school, but those patrons are not the ones complaining, although the service furnished them is not as good as that furnished the patrons who are complaining. Granting the relief prayed would probably, if not cer-

tainly increase the discrimination against the residents in the south end of the district.

The court found in effect that the directors were doing the best they could with what they had, under the circumstances, and we think their discretion which is being honestly exercised should not be interfered with, although equal facilities are not furnished all the children in the district, no one of whom is compelled to walk a greater distance than two miles to obtain bus service.

The judgment of the court below will therefore be reversed and the petition dismissed.