NEWARK SCHOOL DISTRICT et al *v.*
CORD-CHARLOTTE SCHOOL DISTRICT #8 et al

82-157                                    644 S.W.2d 110

Supreme Court of Arkansas
Opinion delivered January 10, 1983

*J. Winston Bryant,* for appellants.

*Bill W. Bristow, P.A.,* for appellees.

RICHARD B. ADKISSON, Chief Justice. The Independence County Chancery Court: granted the request of Cord-Charlotte School District for injunctive relief, holding that both the sending and receiving district must approve of student transfers, regardless of claim for state aid, from which Newark School District appeals; denied Cord-Charlotte's request for damages, holding that the remedy in this state for the correction of improper student attendance is by injunctive relief only, from which Cord-Charlotte cross appeals. We affirm on direct and cross appeal.

The dispute between the two adjoining districts began in 1979 when Newark allowed students residing in Cord-Charlotte to attend its school. Cord-Charlotte filed suit in chancery for injunctive relief and damages. Before the chancery court could decide the case, the Independence County Board of Education and Newark approved the transfer of the students. The chancery court then held the action of the school board constituted a legal transfer and could only be challenged by appeal to circuit court, but reserved a ruling on the issue of damages. The circuit court likewise approved the legality of the transfer, which was appealed to this court. We reversed, holding that in the case of adjoining districts both the receiving district, Newark, and the sending district, Cord-Charlotte, must approve the transfer. *Cord-Charlotte Sch. Dist. No. 8* v. *Independence Co. Educ. Bd.,* 271 Ark. 217, 608 S.W.2d 12 (1980).

While the case was pending on appeal to this court, Cord-Charlotte and Newark were able to reach an agreement

whereby both districts consented to the students attending Newark for the 1980-81 school years. Efforts to renew this agreement for the 1981-82 school year failed; nevertheless, Newark again accepted students from Cord-Charlotte for the 1981-82 school year.

Thereupon, Cord-Charlotte filed suit in chancery court requesting Newark be enjoined from accepting the students. Cord-Charlotte also asked for damages for the 1981-82 school year and asked the court to revive the 1979 action in which it reserved ruling on damages for the 1979-80 school year.

Ark. Stat. Ann. § 80-1501 (Supp. 1981) sets out the place of enrollment for children attending public school:

> The public schools of any school district in this State shall be open and free through completion of the secondary program, to all persons between the ages of six (6) and twenty-one (21) years who are domiciled in the district or, in the case of minors, whose parents or legal guardians are domiciled in the district, or to all persons between these ages who have been legally transferred to the district for education purposes.

Ark. Stat. Ann. § 80-1528 (Supp. 1981) allows children to transfer from one school district to another school district if the board of directors of both districts agree:

> Upon the petition of any person residing in any particular school district (resident district), to transfer the children or wards of such person to another school district (receiving district), the Board of Directors of the resident district may enter into an agreement with the Board of Directors of another school district transferring the children to the receiving district for purposes of education. . . . After the petition has been approved by the Board of Directors of the resident district and the Board of Directors of the receiving district, copies of such written consent shall be filed in the office of the County Clerk, with the person filing the petition and in the administrative office of the

respective school districts. This legal transfer of children from one school district to another places the responsibility for the education of the children on the receiving district and permits the receiving district to count these children in average daily membership for state aid purposes. . . .

Newark argues, however, that as long as it does not claim state aid money, it can accept students from Cord-Charlotte even though there is no "mutual agreement" between the two districts. In making this argument Newark attempts to distinguish between a "legal transfer," where the receiving district claims state aid money, and a mere "transfer" of students where, as here, the receiving district makes no claim to state money. Under Newarks' theory, the rule of *Cord-Charlotte, supra,* which is that both districts must consent to a transfer, applies only when state aid is claimed. However, these contentions ignore the fact that without a legal transfer neither Cord-Charlotte nor Newark can claim state funds for the students. As this court noted in *Cord-Charlotte, supra,* a mass transfer from one district to another "would have a ruinous effect upon the district's finances and, thus, adversely affect the quality of the educational program for the balance of the students in the district." Not only does an economic loss occur to Cord-Charlotte due to the reduction in the number of their students, but also no economic gain occurs to Newark since it receives no state money for these students. In fact, Newark will expend funds to educate the Cord-Charlotte students; funds which would otherwise presumably be spent on Newark students. Therefore, we adhere to our rule that there must be a legal transfer of students, whereby both districts consent to the transfer, even if the receiving district is not attempting to claim state money. For these reasons, the trial court's decision to enjoin Newark from accepting the students is affirmed. *See Bell* v. *Howard County Training Sch.,* 236 Ark. 742, 368 S.W.2d 266 (1963) and *Gillham Sch. Dist. No. 47* v. *Millard,* 203 Ark. 1121, 160 S.W.2d 215 (1942), where this court either upheld or directed that the non-resident students be enjoined from attending a certain school district.

Cord-Charlotte argues on cross appeal that the trial court erred in failing to award them $16,000 in damages against Newark arising from the misapplication of state funds for the 1979-80 school year. Cord-Charlotte also claims damages against Newark for a sum representing the amount which they would have received from the state had the students attended Cord-Charlotte. Damages, in either situation, are inappropriate as reflected by our cases which state:

> This court is committed to the doctrine that school taxes erroneously levied and distributed, pursuant to the levy, to a school district and consumed in educational purposes, cannot be recovered by the school district rightfully entitled thereto. The district to which the taxes rightfully belonged should have proceeded by injunction or other proper remedy to prevent the wrongful assessment, levy and distribution of taxes, or else have brought suit for the recovery of such taxes before they were expended for educational purposes by the district wrongfully receiving them.

*McCrory Special Sch. Dist.* v. *Rural Special Sch. Dist. No. 22,* 181 Ark. 345, 26 S.W.2d 570 (1930); *Lepanto Sch. Dist.* v. *Marked Tree Sch. Dist.,* 173 Ark. 82, 291 S.W. 1006 (1927). Here, the trial court found that Newark had actually expended the monies received from the state for the education of the Cord-Charlotte students for the 1979-80 school year. Also, Cord-Charlotte has not joined in this action the agency disbursing the funds. The proper remedy by one school district against another for illegal student enrollment is by injunction, not by a suit for damages.

Affirmed.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. The issue in this case is narrow, but the choices are not good. The issue is whether parents of children in public schools may be prevented from sending their children to a school in another district when the accepting school district will not attempt

to use the students to collect state aid. The majority has held they may not because to do so would deprive the first district of state aid it would otherwise receive.

I would permit it simply because it is not forbidden by law and it is permitted by policy of the State Department of Education. I recognize that beneath this issue lies the question of what to do when a school district fails to provide an adequate or minimum opportunity for education; or possibly whether a small district, struggling to offer an adequate curriculum should lose students who simply want to attend school in a flush financial district. These, and perhaps other underlying considerations, exist in the two cases we have had between the Cord-Charlotte District and the Newark District.

The problem of transferring students from one public district to another is not one simply or easily solved. When first confronted with the problem we probably made the wrong decision. In *Bell* v. *Howard County Training School,* 236 Ark. 742, 368 S.W.2d 266 (1963), we held both the sending and receiving district had to consent to the transfer, although the statute which governed the situation did not clearly require that. Later cases reinforced our decision. But those cases were, as was the first *Cord-Charlotte* case, concerning a receiving district claiming the student for purposes of receiving turnback money from the state. *Cord-Charlotte School District No. 8* v. *Independence County Board of Education,* 271 Ark. 217, 608 S.W.2d 12 (1980). Newark does not seek to claim state aid for these students. They will merely accept them. According to the testimony of Truett Goatcher, a State Department of Education employee, that procedure is not prohibited by the Education Department regulations. Even so, the chancellor found that merely because school districts *must* provide a public school education to resident patrons (Ark. Stat. Ann. § 80-1501 [Supp. 1981]), it follows that parents *must* send their children to that school and no other.

The majority relies on our first *Cord-Charlotte* case, and Ark. Stat. Ann. § 80-1528 (Supp. 1981), but those relate

to the situation where the receiving district claims the students for purposes of state aid.

This dispute, whether to accept these students, is a matter between the Newark School District and its patrons. Whether it can do so in fairness, without charge or for what charge, is not before us. (The nonresidents' ad valorem taxes would, of course, continue to go to Cord-Charlotte). Furthermore, it is ignored that the parents who can afford to send their children to private or parochial schools will do so and Cord-Charlotte will still lose the money for those students; only those who cannot afford that luxury or choice will be forced to accept an educational opportunity they choose to reject.

The majority decision not only imposes its judicial will on these parents, it protects and fosters an institution that may well not deserve protection and preservation. It is common knowledge some small districts in Arkansas are not providing a minimum educational opportunity. I do not imply that Cord-Charlotte is one of those districts, but it may well be — there is no evidence in that regard and that question is not directly involved. But the majority decision will not only prolong the existence of such districts, it may also promote mediocre public education.

The State Department of Education has said it would not stop the transfer and neither would I.