Buford HORTON and Laretta Horton, Husband and Wife, and Phillip Allen Roberson, By and Through His Guardians and Next Friends, Buford Horton and Laretta Horton; Jamie A. Williams and Rhonda Williams, By and Through Janie Williams, Next Friend, Plaintiffs,

v.

MARSHALL PUBLIC SCHOOLS, Herbert Cleek, Individually and in His Official Capacity as Superintendent of Marshall Public Schools; Spence Holder, Individually and in His Capacity as Principal of Marshall Public Schools; Coy England, Cecil Ray Jennings, Jr., Bob Blare, James Hubbard, and Melvin Englands, Individually and in their Respective Official Capacities as Members and Directors of the School Board of the Marshall School District, Defendants.

Civ. No. 83–3038.

United States District Court,
W.D. Arkansas,
Harrison Division.

March 8, 1984.

Filed June 1, 1984.

Marcia McIvor, Ozark Legal Services, Fayetteville, Ark., Margaret Reger, Ozark Legal Services, Harrison, Ark., for plaintiffs.

W. Paul Blume, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This action arises out of the efforts of Phillip Roberson and Rhonda Williams to be enrolled as students in the Marshall Public Schools. On about September 13, 1982, Phillip Roberson, who was 17 years old, was brought by his father to Marshall, Arkansas, to live with his mother, Barbara Roberson, and his uncle and aunt, Buford and Laretta Horton, all residents of the Marshall School District. Prior to this, Phillip had lived with his father in Springfield, Missouri. When the father began to experience marital difficulties, he brought Phillip to Marshall to live with Ms. Roberson. Ms. Roberson had moved to Marshall, where she owned property, the previous July; she had found work and registered to vote in Marshall. Phillip enrolled in the Marshall Public Schools and attended regularly, making good grades and causing no problems.

Sometime after Phillip moved to Marshall, Ms. Roberson left Marshall. Phillip remained with the Hortons. On about January 4, 1983, Phillip was called to the office of the principal of Marshall High School, Mr. Spence Holder. Mr. Holder informed Phillip that he could only attend Marshall High School if he lived with a parent or

legal guardian living in Marshall. No written notice of any potential or impending dismissal was ever sent to Phillip, his parents, or his aunt and uncle. On January 7, 1983, Phillip's name was removed from the rolls of Marshall High School. Following the removal of his name from school rolls, Phillip and members of his family made several attempts to obtain permission for Phillip to be readmitted. Mrs. Horton did contact Ozark Legal Services and initiated guardianship proceedings. Phillip was denied readmission to Marshall High School until February 11, 1983, when he was allowed to return to school on the condition that Mr. Horton be named legal guardian of Phillip. Subsequent to returning to school, Phillip was advised that because he had missed more than 15 class periods in each subject during the spring 1983 semester, school policy required that he automatically receive failing grades in all of his courses for the semester. On April 20, 1983, Mr. and Mrs. Horton and Phillip filed this action under 42 U.S.C. § 1983 requesting the court to issue a preliminary injunction requiring Marshall Public Schools to reinstate Phillip as a student in good standing and to permit him to make up any work missed during his absence. (Subsequent to plaintiffs filing suit, an agreement was reached with the school district allowing Phillip to make up the time and the work he had missed during his absence.) Plaintiffs also request that the court issue a declaratory judgment that the removal of Phillip from Marshall Public Schools rolls violated the due Process and the Equal Protection clauses of the Fourteenth Amendment to the United States Constitution and that ARK.STAT.ANN. § 80–1501, as amended by Act 828 of 1981, is unconstitutional. Plaintiffs also requested damages.

On April 26, 1983, Janie Ann Williams and Rhonda Williams sought permission from the court to intervene in this action. Rhonda, a ninth grader, had been sent on about April 4, 1983, by her mother to live in Marshall with her uncle and aunt, Leo G. and Janie Ann Williams, because of domestic problems at home. On April 6, Mrs. Williams took Rhonda to be enrolled in the Marshall Public Schools, but was told by Mr. Holder that Rhonda could not be enrolled unless Mrs. Williams obtained letters of guardianship. Mrs. Williams investigated the possibility of obtaining guardianship letters, but Rhonda's mother was reluctant to agree to such a proceeding. Rhonda was never admitted to the Marshall Public Schools even though she remained in Marshall for the remainder of the 1982–83 school year. As a consequence of her not being allowed to enroll in the Marshall schools, Rhonda was forced to repeat the ninth grade in another school district the following year. By an order signed December 13, 1983, the court granted Mrs. Williams and Rhonda permission to file their complaint in intervention, seeking the same relief sought by Phillip and the Hortons.

In both removing Phillip's name from the school rolls and refusing to enroll Rhonda, Mr. Holder followed a policy that a parent or guardian must reside in the school district for a child to be eligible to attend Marshall Public Schools. This policy was based upon ARK.STAT.ANN. § 80–1501 (Repl.1980). The plaintiffs contend that section 80–1501 is unconstitutional on its face as a violation of the Equal Protection Clause.

The Supreme Court has on a number of occasions had the opportunity to consider the constitutionality of state regulations which impose a condition of residency upon the right to receive a benefit. In *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the Court overturned a Connecticut requirement that applicants for public assistance must have lived in the state for at least one year before they could become eligible to receive such benefits. Although the Supreme Court held that such a durational requirement clearly violated the Equal Protection Clause by penalizing the fundamental right of interstate travel without promoting a compelling state interest, Justice Brennan, writing for the Court, noted:

We imply no view of the validity of waiting-period or residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel. *Shapiro v. Thompson, supra,* at 638 n. 21, 89 S.Ct. at 1333 n. 21.

In *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), Tennessee law limited voter registration to those persons who at the time of the election had been residents of Tennessee for one year and residents of the county for three months. The Supreme Court invalidated the durational component of the residence requirement, but Justice Marshall added, "We emphasize again the difference between bona fide residence requirements and durational residence requirements ... an appropriately defined and uniformly applied requirement of bona fide residence may be necessary to preserve the basic conception of a political community, and therefore could withstand close constitutional scrutiny." *Dunn v. Blumstein, supra,* at 344, 92 S.Ct. at 1004.[1]

The Supreme Court has also drawn similar distinctions between durational residence requirements and bona fide residence requirements in cases involving publicly supported education. The constitutionality of a Connecticut statutory definition of "resident" and "non-resident" for purposes of tuition payment at state-supported colleges and universities was at issue in *Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973). A student's residence classification was established at the time of enrollment and was permanent and irrebuttable for the entire time the student remained at the university. The Court did not question Connecticut's right to classify students by residency status and to charge non-residents higher tuitions and fees; rather, the Court ruled that the Due Process Clause was violated by a permanent, irrebuttable presumption of nonresidence. In *Starns v. Malkerson,* 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971), the Court summarily affirmed a district court decision upholding a regulation of the University of Minnesota providing that no student could qualify as a resident for tuition purposes until he had been a bona fide domiciliary for at least one year. *See Starns v. Malkerson,* 326 F.Supp. 234 (D.Minn.1970) (three-judge court).

More recently, in *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), the Supreme Court held that a Texas statute which authorized local school districts to deny enrollment to children who could not establish that they had been legally admitted into the United States was constitutionally infirm under the Equal Protection Clause. Justice Brennan did state, however, that a school district was within its rights "to apply ... established criteria for determining residence" to an undocumented child or to any other child seeking admission to its schools. *Plyler v. Doe, supra,* at 227 n. 22, 102 S.Ct. at 2400 n. 22.[2]

In *Martinez v. Bynum,* 461 U.S. 321, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983), the Supreme Court again looked at TEX.EDUC. CODE ANN. § 21.031(b) (Supp.1982), the same statute in question in *Plyler.* Specifically, the Court reviewed section 21.031(b), (c) and (d) which denied tuition-free admission to a minor living apart from a parent, guardian, or other person having lawful control of him if his presence in the school

---

**1.** *See also Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (Court invalidated a one-year residence requirement for eligibility for public medical assistance), and *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) (per curiam) (distinguished continuing-residence requirement from a durational requirement).

**2.** In reaching its decision, the Court in *Plyler* reaffirmed its position in *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), that public education is not a fundamental right granted to individuals by the Constitution.

district was "for the primary purpose of attending the public free school."[3] The plaintiffs had amended their complaint to narrow the issue to whether section 21.031 was unconstitutional on its face.

The Court had little difficulty in arriving at the conclusion that:

> A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents. Such a requirement with respect to attendance in public free schools does not violate the Equal Protection Clause.... It does not burden or penalize the constitutional right of interstate travel, for any person is free to move to a State and to establish residence there. A bona fide residence requirement simply requires that a person does establish residence before demanding the services that are restricted to residents.

*Martinez v. Bynum, supra,* at ——, 103 S.Ct. at 1839, 75 L.Ed.2d at 879.

Once this principle was established, the remaining issue became whether section 21.031 was a bona fide residence requirement. The Court chose as its test of residence a two-part definition requiring both physical presence and an intention to remain.[4] This "classic" definition of residence was distinguished from the traditionally more rigorous test of domicile, essentially the standard used in *Vlandis* to determine whether a college student qualified for resident tuition status. In general, domicile denoted the fixed and permanent home of an individual, the place to which he had the intention of returning whenever he was absent. "This standard [domicile] could not be applied to school-age children in the same way that it was applied to college students." *Martinez v. Bynum, supra,* at ——, 103 S.Ct. at 1874, 75 L.Ed.2d at 889.

ARK.STAT.ANN. § 80–1501 (Repl.1980) provides that the public schools of any Arkansas school district will be open and free to those children "who are domiciled in the district or, in the case of minors, whose parents or legal guardians are domiciled in the district...."[5] The issue here then is whether section 80–1501 imposes a bona fide residence requirement or whether it truly imposes a standard which may not be applied to public school-age students.

Domicile is most often used to designate "a person's true, fixed, and permanent home and place of habitation ... where he

---

3. The pertinent sections of section 21.031 provide:

(b) Every child in this state ... who is over the age of five years and not over the age of 21 years on the first day of September of the year in which admission is sought shall be permitted to attend the public free schools of the district in which he resides or in which his parent, guardian, or the person having lawful control of him resides....

(c) The board of trustees of any public free school district ... shall admit into the public free schools of the district free of tuition all persons ... who are over five and not over 21 years of age ... if such person or his parent, guardian or person having lawful control resides within the school district.

(d) In order for a person under the age of 18 years to establish a residence for the purposes of attending the public free schools separate and apart from his parent, guardian, or other person having lawful control of him under an order of a court, it must be established that his presence in the school district is not for the primary purpose of attending the public free schools. The

board of trustees shall be responsible for determining whether an applicant for admission is a resident of the school district for purposes of attending the public schools.

4. "When ... a person voluntarily takes up his abode in a given place, with intention to remain permanently, or for an indefinite period of time; or, to speak more accurately, when a person takes up his abode in a given place, without any present intention to remove therefrom, such place of abode becomes his residence...." *Inhabitants of Warren v. Inhabitants of Thomaston,* 43 Me. 406 (1857).

5. The complete text of section 80–1501 reads: The public schools of any school district in this State shall be open and free through completion of the secondary program, to all persons between the ages of six (6) and twenty-one (21) years who are domiciled in the district or, in the case of minors, whose parents or legal guardians are domiciled in the district, or to all persons between these ages who have been legally transferred to the district for education purposes.

intends to remain, and to which he expects to return when he leaves without intending to establish a new domicile elsewhere." *Sturgis v. Washington,* 368 F.Supp. 38 (W.D.Wash.1973), *summarily aff'd,* 414 U.S. 1057, 94 S.Ct. 563, 38 L.Ed.2d 464 (1974). Any single definition of domicile will not be totally satisfactory, however, because

> The concept of domicil cannot be defined so as to embrace all of its phases. The difficulty arises because "domicil" is never employed in the abstract, but always with reference to various specific ... rights ... consequently, the term has come to have different meanings even within the same jurisdiction, depending upon the connection in which it is used. 25 Am.Jur.2d 5.

■ As a general rule in Arkansas, domicile and residence have not been considered to be synonymous. *Stephens v. AAA Lumber Co.,* 238 Ark. 842, 384 S.W.2d 943 (1964). The difference in the terms is most often expressed as a matter of intent: "Domicile differs from residence only in the existence of a subjective intent to remain more or less permanently in the particular state." *Wheat v. Wheat,* 229 Ark. 842, 318 S.W.2d 793 (1958). In a more recent case the Arkansas Supreme Court held that there was no particular length of time required to establish domicile, but that there must be residence attended by such circumstances manifesting a bona fide intention of making it a fixed and permanent

abode. *Moon v. Moon,* 265 Ark. 310, 578 S.W.2d 203 (1979). In *Moon* the test of domicile focused on an inquiry into the existence of a bona fide intention to become a permanent resident of the new abode. For purposes of deciding whether a plaintiff was a citizen of Arkansas for diversity jurisdiction it was said that "[to] acquire a domicile of choice, the law requires the physical presence of a person at the place of the domicile claimed, coupled with the intention of making it his present home." *Ellis v. Southeast Construction Co.,* 260 F.2d 280 (8th Cir.1958). Therefore, it appears that there is authority to support the notion that in Arkansas domicile means actual residence in a place accompanied by the subjective intent of making it a present home more or less permanently.[6]

The Arkansas Supreme Court has not yet had an opportunity to explain exactly what domicile in section 80–1501 requires, but it has cited the statute in other contexts. In *Newark School Dist. v. Cord-Charlotte School Dist.,* 278 Ark. 110, 644 S.W.2d 253 (1983), the court interpreted ARK.STAT. ANN. § 80–1528 (Supp.1981) regarding legal transfers between school districts.[7] The court did not address the issue of just what domicile means for purposes of attending public schools; its only comment that might be helpful here was that the dispute in *Newark* began when the Newark school district allowed students "residing" in the Cord-Charlotte school district to at-

**6.** Compare this definition with one used to determine domicile at the time of death of an incompetent for purposes of appointing a domiciliary administrator. In those circumstances domicile was established by the abandonment of any previous domicile with the intent not to return, and actual residence in a place with the intent of making the new residence a permanent home. *Phillips v. Sherrod Estate,* 248 Ark. 605, 453 S.W.2d 60 (1970).

**7.** Section 80–1528, in relevant part, provides: Upon the petition of any person *residing* in any particular school district (resident district), to transfer the children or wards of such person to another school district (receiving district), the Board of Directors of the resident district may enter into an agreement with the Board of Directors of another school

district transferring the children to the receiving district for purposes of education.... After the petition has been approved by the Board of Directors of the resident district and the Board of Directors of the receiving district, copies of such written consent shall be filed in the office of the County Clerk, with the person filing the petition and in the administrative office of the respective school districts. This legal transfer of children from one district to another places the responsibility for the education of the children on the receiving district and permits the receiving district to count these children in average daily membership for state aid purposes. This Act [this section] does not transfer the local tax money from the resident district. [emphasis added.]

tend its schools. *Newark School Dist. v. Cord-Charlotte School Dist., supra,* at 111, 644 S.W.2d 253. The court again cited sections 80–1501 and 80–1528 in *Delta Sp. School Dist. #5 v. McGehee Sp. School Dist. #17,* 280 Ark. 489, 659 S.W.2d 508 (1983). There, the issue was whether students who "reside and are domiciled in one district" may attend school in another district without the consent of both districts. The court held that the plain meaning of section 80–1501 was that children were entitled to a free education in the district where they were domiciled and concluded that it was error to allow children "who reside in and are domiciled in" one district to attend school in another district without the consent of both districts. *Delta Sp. School Dist. #5 v. McGehee Sp. School Dist. #17, supra,* 659 S.W.2d at 509.

■ In deciding whether section 80–1501 is a bona fide residence requirement of the sort approved in *Martinez,* we take as our starting point the Supreme Court's minimum standard for permissible residence requirements:

> But at the very least, a school district generally would be justified in requiring school-age children or their parents to satisfy the traditional, basic residence criteria—*i.e.,* to live in the district with a bona fide intention of remaining there—before it treated them as residents. *Martinez,* at ——, 103 S.Ct. at 1874, 75 L.Ed.2d at 889.

We note a substantial similarity between the Supreme Court's basic residence criteria and the definition of domicile, nor are we the only ones to do so. Justice Marshall, the lone dissenter in *Martinez,* believed that the standard approved by the majority of the Court was not the traditional definition of residence, but rather was the standard for determining domicile. Justice Marshall went so far as to suggest

that the cases which the majority cited in support of its definition of residence involved not the common law concept of residence at all, but actually concerned state statutes which expressly incorporated a domiciliary standard or which were so interpreted by state courts. *See Martinez* at —— n. 5, 103 S.Ct. at 1847 n. 5, 75 L.Ed.2d at 893 n. 5.

■ Certainly, the domicile requirement in section 80–1501 would be constitutionally suspect if it imposed any sort of durational requirement upon the right to attend the free public schools of Arkansas. While such a requirement may be applied to college students, it could not be applied in the same manner to school-age students. *Martinez* at ——, 103 S.Ct. at 1844, 75 L.Ed.2d at 889. We feel sure, however, that section 80–1501 contains no such standard nor would it ever be interpreted to require residence for a minimum period of time. *See Moon v. Moon, supra.*

■ We are not overlooking the fact that the traditional definition of domicile has required "a subjective intent to remain more or less permanently." *Wheat v. Wheat, supra.* Under the minimum standards of *Martinez,* however, a school district may require that public school students or their parents live in the district with a bona fide intention to remain there:

> Of course, the "intention to remain" component of the traditional residency standard does not imply an intention never to leave. Given the mobility of people and families in this country, changing a place of residence is commonplace. The standard accommodates that possibility as long as there is a bona fide present intention to remain. *Martinez* at —— n. 13, 103 S.Ct. at 1844 n. 13, 75 L.Ed.2d at 889 n. 13.[8]

---

**8.** Neither are we overlooking the fact that the Arkansas General Assembly amended section 80–1501 in 1981 by substituting domicile for residence. The original text of section 80–1501 as adopted in 1931 read:

> The public schools of any school district shall be open and free to all persons between the

ages of six [6] and twenty-one [21] years, residing in that district, and the directors of any district may permit older or younger persons to attend the schools under such regulations as the State Board of Education may prescribe.

Likewise, we believe that the "intention to remain more or less permanently" component of the traditional domicile standard can accommodate a mobile society. This is true in part because as previously noted the concept of domicile adapts itself to different purposes within a jurisdiction, depending upon the right involved. In Arkansas the right of all persons between the ages of six and twenty-one years to a free public education was established in art. 14, § 1, of the Arkansas Constitution.[9] The Arkansas Supreme Court has consistently leveled any obstacle to the right to receive a free public education. In *Dowell v. School District No. 1, Boone County*, 220 Ark. 828, 250 S.W.2d 127 (1952), the court held that no school district could require payment of a registration fee to attend the public schools, citing the constitutional mandate for free education. In *Special School Dist. No. 65 v. Bangs*, 144 Ark. 34, 221 S.W. 1060 (1920), the court agreed that an Act of the General Assembly allowing a school board to charge tuition when it deemed it necessary to do so was not permitted under the Arkansas Constitution, saying "... under the plain mandate of our Constitution ... the gratuitous instruction of all the persons in the school district between the ages of six and twenty-one years is guaranteed in the public schools." *Bangs, supra*, at 36, 221 S.W. at 1060. *See also Common School Dist. 42 v. Stuttgart Special School Dist. 22*, 187 Ark. 119, 58 S.W.2d 680 (1933), and *Board of Directors of Gould Special School Dist. v. Holdtoff*, 171 Ark. 668, 285 S.W. 357 (1926).

■ Given the long-standing commitment to the principle that Arkansas public schools should be open and free to all school-age children living in a school district, we find it difficult to believe that domicile for purposes of public school attendance would be interpreted to require anything more than a present intention to remain, a standard already approved in *Martinez*. Neither are we persuaded that the concept of domicile in section 80–1501 does not countenance and would not accommodate the mobility of contemporary families, even those who reside in a school district for a period of time without the intention of making that home a fixed and permanent abode.

■ An issue also exists as to whether section 80–1501, though constitutional, was applied in a manner which denied plaintiffs' due process. The now familiar inquiry into this issue involves two steps: first, were plaintiffs deprived of a protected interest and, second, if so, what process was their due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1981).

■ Those property interests protected by the Due Process Clause may include an interest in receiving a benefit, but the recipient of that benefit must have a legitimate claim of entitlement to it. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct.

---

9. The original text of art. 14, § 1, of the Constitution of the State of Arkansas (adopted in 1874) provides:

§ 1. Free school system.—Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free schools whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruction.

In 1967, art. 14, § 1, was amended by Amendment 53 as follows:

§ 1. Free school system.

Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education. The specific intention of this amendment is to authorize that in addition to existing constitutional or statutory provisions the General Assembly and/or public school districts may spend public funds for the education of persons over twenty-one (21) years of age and under six (6) years of age, as may be provided by law, and no other interpretation shall be given to it. (Amendment 53 was adopted to confirm specifically the power of the General Assembly and of local school districts to spend public funds for the education of persons over twenty-one and under six years of age. *Fortman v. Texarkana School Dist. No. 7*, 257 Ark. 130, 514 S.W.2d 720 (1974).

2701, 33 L.Ed.2d 548 (1972). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth, supra*, at 577, 92 S.Ct. at 2709. In *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the Supreme Court held that a state must recognize as a property interest a student's legitimate entitlement to a public education and that such a property interest may not be terminated for misconduct without some minimum due process protection. Of course, in the present case the deprivation of the right to attend public school was not based upon any misconduct upon Phillip's or Rhonda's part, but rather it was based upon their ineligibility under state law to attend the Marshall Public Schools. However, because "education is perhaps the most important function of state and local governments," *Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), we believe a student's right to public education is a protected property interest in either case.[10]

In regard to the issue of what process was due, a student facing interference with the protected interest in public education "must be given some kind of notice and afforded some kind of hearing ... the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Goss v. Lopez, supra*, 419 U.S. at 579, 95 S.Ct. at 739. We cannot find in either Rhonda's or Phillip's case that the minimum requirements of due process were not met. It appears that under the circumstances adequate notice of the potential eligibility problems was given and both parties were given adequate opportunity to respond and to correct any mistakes of fact. This is not to say, how-

ever, that the school officials involved did everything that they could have done to aid the students more completely, but that is not what the Due Process Clause requires. We find only that the minimum requirements were complied with.

In conclusion, the court finds that ARK. STAT.ANN. § 80–1501 is a constitutional residence requirement and that it was applied in a constitutional manner. Therefore, judgment will be entered for the defendants.

---

**10.** *See also Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), in which the Court held due process required that welfare recipients have an opportunity to establish their eligibility under applicable statutes to receive welfare benefits.