The Honorable Mike Ross State Senator Post Office Box 374 Prescott, Arkansas 71857
Dear Senator Ross:
This is in response to your request for an opinion on three questions relating to public school transportation, which are set forth and answered in the order posed. Your first question is:
 If a school district buses students, must it bus all students living within the district, including those residing within the city limits?
In my opinion, a school district that provides transportation need not invariably provide or offer to provide transportation to each pupil of the district. Woodlawn School Dist. No. 6 v. Brown, 216 Ark. 14,223 S.W.2d 818 (1949). Each school board is authorized "to purchase vehicles and otherwise provide means for transporting pupils to and from school,when necessary." A.C.A. § 6-19-102(a) (Repl. 1993) [emphasis added]. Each school board is also authorized to "make such . . . arrangements as it may deem best, affording safe and convenient transportation to the pupils. . . ." A.C.A. § 6-19-102(b). Finally, school boards are authorized and directed to "[d]o all . . . things necessary and lawful for the conduct of efficient free public schools in the district." A.C.A. §6-13-620(13) (Supp. 1995).
School boards have implied powers as well as express powers and are authorized to exercise those powers that may be fairly implied from the powers expressly granted and the duties expressly imposed. "Such powers will be implied when the exercise thereof is clearly necessary to enable them to carry out and perform the duties legally imposed upon them."Fortman v. Texarkana School District No. 7, 257 Ark. 130, 132,514 S.W.2d 720 (1974), quoting A.H. Andrew's Co. v. Delight Special SchoolDist., 95 Ark. 26, 128 S.W. 361 (1910). In my opinion, the express powers to purchase buses and otherwise provide transportation when necessary, to make the transportation arrangements it deems best, and to do all things necessary and lawful for the conduct of efficient free public schools, clearly imply authority to determine the amount of transportation to be provided and to allocate that limited resource on a reasonable basis.[1]
My opinion that the board has considerable discretion in the area of transportation in particular is consistent with the general and "broad discretion [that] is vested in the board of directors of each school district in the matter of directing the operation of the schools. . . ."Safferstone v. Tucker, 235 Ark. 70, 72, 357 S.W.2d 3 (1962). The courts will not interfere with a discretionary decision "unless there is a clear abuse of [discretion] and the burden is upon those charging such an abuse to prove it by clear and convincing evidence." Id. (citations omitted). The court also quoted from an earlier decision: "Courts will not interfere in matters of detail and government of schools, unless the officers refuse to perform a clear, plain duty, or unless they unreasonably and arbitrarily exercise the discretionary authority conferred upon them." Id. at 73, quoting Pugsley v. Sellmeyer,158 Ark. 247, 250 S.W. 538 (1923). These rules have been reaffirmed in recent years. See Springdale Bd. of Educ. v. Bowman, 294 Ark. 66,740 S.W.2d 909 (1987); Henderson State Univ. v. Spadoni,41 Ark. App. 33, 848 S.W.2d 951
(1993).
With respect to transportation issues in particular, White v. Jenkins,213 Ark. 119, 209 S.W.2d 457 (1948), involved, in part, a challenge to a school board's decision on how to employ its school bus, which challenge was rejected on the grounds that the decision was a discretionary, local matter.
More on point is Woodlawn, 216 Ark. 14, in which the court considered a school board's transportation policy which did not provide transportation to all pupils and which required some pupils to walk significant distances to catch buses while others apparently were picked up at their homes. The court reversed the specific ruling of the trial court requiring the district to acquire another bus to improve service, but agreed with its general reasoning, stating: "The [lower] court found in effect that the directors were doing the best they could with what they had, under the circumstances, and we think their discretion which is being honestly exercised should not be interfered with, although equal facilities are not furnished all the children in the district. . . ."Id. at 17. The court noted that the district's failure to furnish equal facilities was unintentional and unavoidable. Id. at 16.
No more newer Arkansas cases that are relevant have been found. More recent, similar cases from another jurisdiction appear to be, however, to the same general effect. See, e.g., Manjares v. Newton, 64 Cal.2d 365,411 P.2d 901, 49 Cal. Rptr. 805 (1966); see also Arcadia Unified SchoolDist. v. State Dept. of Educ., 2 Cal.4th 251, 825 P.2d 438,5 Cal. Rptr. 2d 545 (1992).
In Clark v. Directors of Little Rock School Dist., 328 F.Supp. 1205
(E.D. Ark. 1971), the court ordered a school district to provide transportation to some, but not all, of its pupils, as an element of a plan to desegregate the schools. The court discussed the expense of providing transportation and the difficulty of obtaining buses on an abbreviated schedule as factors it considered in determining the level of service to be ordered, although the court indicated that the achievement of integration was paramount. The circuit court affirmed the district court's ruling on this question with one modification that lessened the number of pupils to whom transportation would be offered. Clark v.Directors of Little Rock School Dist., 449 F.2d 493 (8th Cir. 1971). While this case does not address the question of whether Arkansas law requires school transportation to be universal if provided at all, it does suggest implicitly that there is no federal constitutional violation invariably present in a district's decision to transport fewer than all its pupils.
Under the foregoing authorities, then, a school board's policy offering transportation to some students and not others should not be subject to challenge, provided that the distinctions made among students (most likely on the basis of the distances of their homes from the schools) have some rational basis (i.e., are not unreasonable or arbitrary). See,e.g., McClelland v. Paris Public Schools, 294 Ark. 292, 742 S.W.2d 907
(1988); Safferstone, 235 Ark. 70.
Whether a rational basis would underlie a transportation policy that distinguishes between residents and non-residents of a municipality
(whose boundaries may or may not correspond closely to the boundaries of the school district) will depend upon the relevant facts and circumstances prevailing, probably including, but not limited to, the extent to which residence within the municipality is a reasonable proxy for actual distance from the schools or for some other factor rationally related to the governmental purpose of the policy.
Your second question is:
 May a school district charge a fee for a student riding a school bus? Does it make a difference if the student lives within the city limits or within a certain distance of the school facility? May a school district charge some bus students and not charge others; if so, under what conditions and circumstances can the difference be justified? If a charge is allowable, are there limitations as to the amount of the charge; i.e., an amount necessary to recoup the district's operational expenses?
Although the matter is not free from doubt, it is my opinion that a school district might, under appropriate facts and circumstances, lawfully impose fees for transportation. The analysis involves two separate questions: whether school districts have authority to impose transportation fees, and whether the imposition of fees would be unlawful even if the district's authority is clear. With respect to the former, it must be noted that there is no express constitutional or statutory authority for imposing transportation fees. If the authority exists, then, it must be implied.
There appear to be no reported decisions of Arkansas appellate courts addressing whether school districts have implied authority to impose any fees.[2] While several opinions of this office, some of which are cited below, discuss the constitutionality of the imposition of certain fees, they do not directly confront the issue of the source and extent of the authority to impose fees.
Notwithstanding the lack of relevant precedent in Arkansas, I conclude that transportation fees likely would be held to be implicitly authorized under Arkansas law for two reasons.[3] First, the statutory authorization to provide transportation, quoted above, includes the phrases "when necessary" and "as it may deem best" and school boards are generally authorized to do all things "necessary and lawful" for the conduct of schools. As discussed above, I believe these phrases are indicative of the broad discretion of school districts in determining matters relating to the transportation of pupils. I further believe that the discretionary nature of the statutory authorization makes it likely that the power to impose fees for transportation would be held to be fairly implied, such power being limited, of course, by the requirement, discussed above, that the board act in a reasonable manner.
Second, the reasoning set forth above is consistent with that of at least one court considering the question under similar laws, which held that the authority to impose fees for transportation may be implied. SchoolDist. of Waterloo in County of Douglas v. Hutchinson, 244 Neb. 665,508 N.W.2d 832 (1993).
As noted above, a conclusion that school districts are authorized to impose transportation fees does not end the inquiry. One must also examine whether the imposition of such fees is for some reason unlawful notwithstanding the implied statutory authorization. Here, once again, there are two inquiries: whether such fees are prohibited by constitutional and statutory law requiring free schools, and whether the set of fees actually imposed by a particular school district is violative of equal protection or other constitutional rights of pupils in the district.
Our constitution and statutes require that the public schools be free. Ark. Const. art. 14, § 1; A.C.A. § 6-18-202(a) (Repl. 1993). As a result, school districts cannot impose direct tuition fees or other charges that indirectly violate the legal requirement that instruction be gratuitous, even if such fees are authorized by statute. See Dowell v.School Dist. No. 1, Boone County, 220 Ark. 828, 250 S.W.2d 127 (1952);Special School Dist. No. 65 of Logan County v. Bangs, 144 Ark. 34,221 S.W. 1060 (1920). Prior opinions of this office, which are consistent with judicial opinions from other jurisdictions addressing the issue,[4] might fairly be characterized as stating that these constitutional and statutory provisions mean that a fee may not be charged for goods or services that are necessary and integral parts of the required system of free public schools, and that, conversely, fees for other goods or services may be imposed without violating the requirement that the schools be free. See Op. Att'y Gen. 93-393, 91-219, 90-227, 83-154, 73-137 (copies enclosed).
In my opinion, transportation to school generally is within the second category (i.e., transportation to school generally is a service that is not a necessary and integral part of the required system of free public schools), and thus may legitimately be the subject of a fee.[5] This conclusion follows as a matter of logic from the fact Arkansas law does not require school districts to transportation to students at all. If the General Assembly has determined that a district's system of free public schools need not include transportation services, how can it be said that transportation services are a necessary or integral part of any such system? Certainly a pupil who is given the option of using the district's transportation services for a fee is no worse off than if he or she had been offered no transportation at all. My conclusion is also consistent with at least one reported decision on the same issue, Sutton v. CadillacArea Public Schools, 117 Mich. App. 38, 323 N.W.2d 582 (1982).
The foregoing reasoning is substantially similar to that of the Supreme Court of the United States in Kadrmas v. Dickinson Public Schools,487 U.S. 450 (1988), in which the Court held that a state statute authorizing the imposition of transportation fees, the payment of which is not a condition to school attendance, is not a violation of equal protection under the United States Constitution. The plaintiff was a pupil whose family income was at or near the poverty level and who made private arrangements for transportation to school after the defendant imposed transportation fees. The Court's holding was based upon the views that: (a) there is no fundamental right, under the federal constitution, to receive an education[6] or to receive transportation, whether or not free, to school; (b) no suspect class is involved (rejecting the argument that pupils whose parents could not afford to pay constituted a suspect class); and (c) there is a rational basis underlying the statute authorizing the charges, as it encourages more districts to offer bus service, albeit only for a fee. With respect to the last point, the Court expressly stated that a school district's decision to offer bus service does not mean that it is constitutionally required to offer it free. Id.
at 462.
The question of whether the set of fees actually imposed by a particular school district is violative of equal protection or other constitutional rights of pupils in the district will, in my opinion, be determined by application of the rational basis test to the fees at issue. See Kadrmas,487 U.S. 450; McClelland, 294 Ark. 292.
With respect to the second part of your second question, it is my opinion that a school district's authority to impose a transportation fee upon a pupil choosing to accept the district's offer of transportation does not depend upon where within the district the pupil, or his or her parents or guardian, resides. As discussed elsewhere herein, however, the distance from a pupil's home to the school may well be an important factor in determining the validity of a transportation scheme that draws distinctions among pupils of the same district.
In response to the third part of your second question, it is my opinion that a district may, in appropriate circumstances, impose a transportation fee upon some of its pupils and not others.
Although the district at issue in Kadrmas, 487 U.S. 450, apparently charged fees to all pupils using the district's transportation, the challenge was based in part upon the fact that, in North Dakota, "reorganized" (i.e., consolidated) districts were required by statute to include in their reorganization plans provisions for transportation by the district, while other districts (such as the defendant) were authorized by statute to impose transportation fees. The Court was willing to assume that the former statute prohibited the imposition of fees, and thus was faced with a situation in which, in the same state, some districts were required to furnish free transportation while others were not required to furnish transportation at all and were authorized to impose fees for any transportation offered. The Court, applying the "rational basis" test to the statutory scheme, concluded that the distinctions made were not arbitrary or irrational, and that they furthered the legitimate governmental purpose of encouraging consolidation of districts by easing parental concerns about the post-consolidation cost of transportation in a larger district.
In my opinion, the same reasoning and test would apply to district rules or policies that impose fees upon some pupils of the district and not others. It is impossible to determine in the abstract, however, whether a particular transportation policy so doing would be deemed to be rationally related to a legitimate governmental purpose. It follows that I cannot, in the context of an opinion, specify the conditions and circumstances that would justify such a policy.
With respect to the fourth part of your second question, it is my opinion that the amount of a transportation fee imposed by a school district would be one factor of many that would be considered in determining whether the fees will be upheld under the rational basis test. I know of no law otherwise limiting the amount of such a fee.
Your third question is:
 How will the new funding formula in the transportation area[7] change any of the above answers?
In my opinion, the new school funding formula established by Act 917 of 1995 will not change any of the foregoing answers or analyses. The manner in which a school district's transportation services are financed appears to be irrelevant to the matters addressed above.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] It might be noted that, prior to 1919, school districts in Arkansas (other than consolidated districts) had no authority, express or implied, to expend school funds on pupil transportation. Hendrix v.Morris, 127 Ark. 222, 191 S.W. 949 (1917). Shortly after the decision inHendrix, the General Assembly enacted a statute authorizing districts to provide transportation. The statute was similar, in relevant part, to A.C.A. § 6-19-102(a) and (b). See Board of Directors of Gould SpecialSchool Dist. v. Holdtorff, 171 Ark. 668, 285 S.W. 357 (1926). In my opinion, the fact that the General Assembly first acted directly in response to the Hendrix decision, and the language used in the 1919 act and A.C.A. § 6-19-102(a) and (b), strongly indicate that the General Assembly has never intended to require school districts providing transportation to provide it to all pupils, regardless of the circumstances (including cost), but only to authorize the provision of transportation as necessary and deemed best.
[2] The circuit court in Spriggs v. Altheimer, Arkansas School Dist.No. 22, 385 F.2d 254 (8th Cir. 1967), held that a school district may charge transportation fees to pupils not residing in the district. The holding apparently was based upon a statute requiring free schools for all pupils residing in the district. That statute, as amended, is codified as A.C.A. § 6-18-202(a) (Repl. 1993) and now requires free schools for all pupils whose parents or guardians live within the district. The court apparently perceived in the statute implied authority to charge transportation fees to nonresidents. While the case is helpful to illustrate that the power to impose transportation fees may be implied by statute rather than expressed, its usefulness here is limited because any authority to impose such fees upon pupils whose parents or guardians live within the district must necessarily be implied by some other source.
[3] I express no opinion with respect to whether a district may impose a fee for school transportation that has been ordered by a federal court as a part of a desegretion plan or otherwise to remedy the effects of past constitutional violations. Under the Supremacy Clause, U.S. Const. art. VI, § 2, that question will be governed by the terms of the court order itself. Clearly, a local district's implied authority under Arkansas law to impose transportation fees is subordinate to a federal court order prohibiting such fees. See generally Reynoldsville CasketCo. v. Hyde, ___ U.S. ___, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995);Missouri v. Jenkins, 495 U.S. 33 (1990). "[S]tate policy must give way when it operates to hinder vindication of federal constitutional guarantees." North Carolina Bd. of Educ. v. Swann, 402 U.S. 43, 45
(1971).
[4] See, e.g., Hartzell v. Connell, 35 Cal.3d 899, 679 P.2d 35,201 Cal. Rptr. 601 (1984); Bond v. Ann Arbor School Dist., 383 Mich. 693,178 N.W.2d 484 (1970); see also generally Annot., 41 A.L.R.3d 752 (1972 and Supp. 1995).
[5] Obviously, this conclusion assumes that a district does not attempt to compel pupils to use its fee-based transportation services as a condition to attending school. If pupils and their parents are not free to make their own arrangements for transportation to and from school, payment of the transportation fee becomes a condition to receiving instruction and the schools are no longer free within the constitutional and statutory requirements.
[6] By contrast, the right to receive a free public education likely would be held to be "fundamental" under the Constitution of Arkansas, which provides in relevant part:
 Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education.
Ark. Const. art. 14, § 1.
It might be argued, based upon the foregoing, that a district's denial of access to its existing transportation system on the basis of a pupil's inability to pay the required fees would amount to an infringement of the fundamental right to receive a free public education if the pupil is truly unable to arrange other transportation to school. School districts that impose fees should, therefore, consider carefully whether and under what conditions to grant fee waivers.
[7] Your request states that "[n]ext year, with the new funding formula, there will be no transportation aid as we know it now." While your statement is true in the sense that districts will no longer receive from the State Department of Education separate funds specifically as transportation aid, it might be noted that "student needs funding" is one of the categories of funding to be provided to school districts and that student needs funding may include transportation aid under rules promulgated by the Department. See A.C.A. §§ 6-20-306(a)(1) and -303(22) (Supp. 1995). It is not at all clear, therefore, that the quantity of transportation provided by a district will not be considered in the determination of the amount of funds the district will receive.