CROSS COUNTY SCHOOL DISTRICT, *et al. v.*
Naomi SPENCER and Roger Spencer, as Parents
and Next Friend of Hannah Spencer Moran

CA 00-1304                                      58 S.W.3d 406

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered November 7, 2001

*Shaver & Smith*, by: *J. Harmon Smith*; and *W. Paul Blume*, for appellants.

*Ford & Glover*, by: *Robert M. Ford*, for appellees.

Terry Crabtree, Judge. The appellants, Cross County School District, the school's principal, superintendent, and school board members, appeal from an order of the Cross County Chancery Court in which the court reversed the school board's decision to expel Hannah Spencer Moran, the daughter of Naomi Spencer and Roger Spencer. We reverse.

Hannah Spencer was in the eighth grade of the Cross County School District when the facts of this case arose. Hannah and another student, Leslie Headley, had been close friends, but the friendship had ended. On Monday, February 21, 2000, a teacher observed Hannah, near the cafeteria, loudly and angrily shouting Leslie's name while approaching Leslie with her fists tightly clinched and her arms extended to her sides. The teacher intervened and separated the two girls. No violence occurred. Subsequent to this altercation, a student told the principal, Mr. David Hopkins, that she had something he needed to see. Principal Hopkins was then given a handwritten, two-page note, addressed to a student named Calvin. The note contained considerable profanity and threats, including death threats against Leslie. The note was signed by Hannah. The note outlined Hannah's plans to fight with Leslie at lunch on Monday. In fact, the incident took place on Monday at lunch. Leslie had not seen the note.

Principal Hopkins took Hannah into his office, asked her about the note, and she admitted writing the note. Principal Hopkins then suspended Hannah and recommended to the school board that she be expelled for the remainder of the 1999-2000 school year. A hearing was held before the school board on March 2, 2000, in which the school board was presented with the note and accepted the expulsion recommendation. On March 7, 2000, Hannah through her parents, Naomi Spencer and Roger Spencer, filed a Petition for Temporary Restraining Order to have appellee reinstated to school. A hearing was held on March 8, 2000, in which the court granted the petition. A trial on the merits was held on April 6, 2000. On June 27, 2000, the court filed its opinion making the injunction permanent. It is from this order that appellants bring this appeal.

We agree with appellants' contention that the trial court ignored its proper role in reviewing the school board's decision and substituted its judgment for that of the board. Such an act is prohibited by law and is a flagrant abuse of discretion. *Wynne Pub. Schs. v. Lockhart*, 72 Ark. App. 24, 32 S.W.3d 47 (2000). Arkansas Code Annotated § 6-18-506(c) (Repl. 1999) requires school boards to hold pupils strictly accountable for disorderly conduct in school and on the school grounds. There is a general policy against intervention by the courts in matters left to school authorities. *Henderson State University v. Spadoni*, 41 Ark. App. 33, 848 S.W.2d 951 (1993). "Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint . . . By and large, public education in our Nation is committed to the control of state and local authorities." *Goss v. Lopez*, 419 U.S. 565, 577-78 (1975) (citing *Epperson v. Arkansas*, 393 U.S. 97 (1968)). The courts have been reluctant to interfere with the authority of local school boards to handle local problems. *Fortman v. Texarkana Sch. Dist. No.* 7, 257 Ark. 130, 514 S.W.2d 720 (1974). A chancery court has no power to interfere with school district boards in the exercise of their discretion when directing the operation of the schools unless the boards clearly abuse their discretion. *Spadoni, supra.* The burden is upon those charging such an abuse to prove it by clear and convincing evidence. *Springdale Bd. of Educ. v. Bowman*, 294 Ark. 66, 740 S.W.2d 909 (1987).

In this case, Hannah was expelled from school pursuant to Rule 23 of the Cross County High School Handbook, entitled "Threatening Another Student," which states "A student shall not threaten another student." Rule 23 then cites Ark. Code Ann. § 5-13-301, the statute covering terroristic threatening. The trial court

found that there was no indication that Hannah "set in motion any chain of events reasonably calculated to communicate the contents of the note beyond the person to whom it was addressed, *i.e.*, Calvin." Also, the court found that it cannot be held that Hannah intended to terrorize the other student referenced in the letter; *i.e.*, Leslie. Based on this, the court reversed the school board's decision to expel Hannah. Appellants point out that although Rule 23 contains a statutory reference to the crime of terroristic threatening, the text of the statue is not set out in the policy.

■■ As stated earlier, our supreme court, in acknowledging a school board's power to expel a student, has held it does not have the power to substitute its judgment for that of such a board, and will do so only when the court determines the board's judgment was arbitrary, capricious, or contrary to law. *Springdale Bd. of Educ. v. Bowman, supra.* From our careful examination of the record before us, we cannot say that the Board abused its discretion or acted arbitrarily, capriciously, or in any way contrary to law. The Board found that Rule 23 is not limited to threats that are communicated to the target of the threat. It is conclusive that the letter written by Hannah contained threatening language toward Leslie. As such, we hold that the appellants acted reasonably in enforcing its policy against a student threatening another student under Rule 23. The trial court improperly substituted its own judgment for that of the Board. Accordingly, we reverse the trial court's decision, and reinstate the Board's decision.

STROUD, C.J., PITTMAN, JENNINGS, and ROBBINS, JJ., agree.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. I concur in the decision to reverse and remand the chancellor's decision. While I agree that the school board did not abuse its discretion when it voted to expel Hannah Moran because she clearly violated Rule 23 by threatening a student, I suspect that the litigation in this case might have been avoided had parents and school officials acted more responsively.

First, it is regrettable that the families in this case could not resolve this matter privately so that it never became an issue for the school board to consider. Hannah's mother admittedly knew about the tension between Hannah and Leslie Heady. Even if she was dissatisfied with the school's response, she was nonetheless responsible for her daughter's compliance with the school rules. Likewise,

Leslie's family was responsible for her compliance with the school rules. We should not be surprised when school officials seem challenged to address behavioral problems that parents are either unwilling or unable to address.

Second, this litigation may have been avoided if school administrators had made a more energetic attempt to determine the source of the problem and had disciplined both girls. Although the record shows that the school board acted within its discretion to impose that discipline upon Hannah, the fact that Leslie was not also disciplined leaves the appearance of favoritism. The record is clear that both Ms. Greene (the counselor) and Mr. Hopkins (the principal) were aware that there were problems between Hannah and Leslie. Greene testified that Hannah came to her office and told her that she was having problems with Leslie and that she had tried to talk to Hopkins about it, but he was out of his office. She further testified that Hannah told her that other students told Hannah that Leslie had placed a note in her locker. Greene testified that she asked Hannah later if her "problem" had "cleared up," and Hannah indicated that she wanted to talk to Hopkins.

Hopkins testified that on the morning of the incident, Hannah's mother telephoned him and indicated there was a problem between Hannah and Leslie. Hopkins thereafter separately called each girl into his office. He told the girls that he "didn't know exactly what was going on," informed the girls of the consequences of breaking the school's rules, and warned the girls to stay away from each other. He further testified that "[t]hey apparently have problems with each other and I didn't probe into why they have problems . . . I didn't feel like it was necessary at the time."

In addition, the school board received an unsigned noted addressed to Hannah, that was found in her locker, which stated in part that "if we got into a fight, I would kill you!" Hopkins testified that he had not seen that note prior to the school board meeting, and that if he had discovered who wrote the note, "the same thing I did in this case I would do in that case."

As the majority correctly notes, our function is to determine whether the school board's decision was an abuse of discretion. However, if we were reviewing the chancellor's order, I would affirm. Given Hopkins's admitted failure to even attempt to determine "exactly what was going on" and the undisputed evidence that Hannah was having problems with Leslie and vice versa, the chancellor was understandably concerned about the appearance of

partiality when the record contained evidence that both girls engaged in threatening behavior, but only Hannah was disciplined. In her letter opinion, the chancellor stated:

> It is also significant, as Ms. Greene substantiates, that Hannah was the object of objectionable missives from the other student and sought out the assistance of the school authorities. Hannah could not obtain redress through appropriate channels. Her mother sought to address the issue on two separate occasions, without success.

> The punishment meted out to Hannah is not only disproportionate given the totality of the circumstances, it is disparate as between the girls involved. There is no discernable reason why the one girl's actions would be ignored while another, whose situations appears to be precisely the same, is expelled for the balance of the school year. This is particularly so when the girl who has gone unpunished might very well have been the instigator.

Parenting and school administration are functions that ought to complement each other. In this case, an adversarial posture developed between a parent and school administrators over an issue that no sensible parent or administrator should discount or disregard — the threat of school violence. Unfortunately, this issue became a legal controversy because the parents failed to insist that their children obey school rules, and because school administrators failed to investigate promptly and thoroughly, and failed to discipline both students.