Debra Ann FORTMAN et al *v.*
TEXARKANA SCHOOL DISTRICT NO. 7

74-71                                        514 S.W. 2d 720

Opinion delivered October 21, 1974

*James E. Davis*, for appellants.

*Ned A. Stewart Jr.*, for appellee.

GEORGE ROSE SMITH, Justice. This is an action by the appellants, two tenth-grade high school girls (suing by their next friends), for a writ of mandamus to compel the appellee school district to re-admit them to the Texarkana, Arkansas, high school. The circuit court, in sustaining the district's motion for summary judgment, held that the board of directors of the district had the authority to permanently expel the two girls. Whether that ruling was legally correct is the only issue argued by the appellants.

The material facts are not in dispute. On the evening of

March 21, 1973, some sort of verbal controversy took place at a dance attended by high school students. As an aftermath to that altercation the two appellants on the following day, during school hours, attacked a third girl, Kathy Walker, on the school grounds. The attack was deliberately planned in advance. The Walker girl was kicked, beaten, and stabbed twice in the head with a six-inch pair of scissors. Her injuries were serious but not fatal. The principal of the high school promptly suspended the appellants for the remainder of the school term.

The principal then recommended to the directors that the two assailants be expelled. After a public hearing, about which no constitutional question is raised, the board voted unanimously for permanent expulsion. At the hearing the district's attorney advised the board that it would have the authority to reinstate the two girls later on if it saw fit to do so. The circuit court, in denying the requested writ of mandamus, noted that after their expulsion the girls had pleaded *nolo contendere* to charges of assault with intent to kill and had each received a five-year suspended sentence.

Counsel for the appellants, in insisting that school directors cannot expel a student, argues that the board's only authority in the matter must be derived from Ark. Stat. Ann. § 80-1516 (Repl. 1960), which was part of the comprehensive 1931 school law:

> The directors of any school district may suspend any person from school for immorality, refractory conduct, insubordination, infectious disease, habitual uncleanliness or other conduct that would tend to impair the discipline of the school, or harm the other pupils, but such suspension shall not extend beyond the current term. The board of directors may authorize the teacher to suspend any pupils, subject to appeal to the board.

We are unwilling to construe the board's authority so narrowly. In the first place, the power of expulsion was legislatively recognized in Section 13 of Act 63 of 1969 (Ark. Stat. Ann. § 80-1656 [Supp. 1973]):

Nothing in this Act shall be construed to limit a local school district's power to adopt reasonable rules, regulations, and policies, not inconsistent with the purposes of this Act, to insure continued orderly operation of schools, including adult education and area vocational-technical high schools, and such powers are deemed to include the right of expulsion for student participation in any activity which tends, in the opinion of the Board, to disrupt, obstruct or interfere with orderly education processes.

It is true that Act 63 was adopted by the legislature to implement Constitutional Amendment 53, which specifically confirmed the power of the General Assembly and of school districts to expend public funds for the education of persons over twenty-one or under six years of age. Nevertheless, we find it difficult to believe that the lawmakers meant to recognize the school board's authority to expel a student after his twenty-first birthday but to deny that power immediately before that anniversary. We can discern no reasonable basis for such a distinction.

In the second place, the directors have implied powers as well as express ones. "But school directors are authorized, not only to exercise the powers that are expressly granted by statute, but also such powers as may be fairly implied therefrom and from the duties which are expressly imposed upon them. Such powers will be implied when the exercise thereof is clearly necessary to enable them to carry out and perform the duties legally imposed upon them." *A. H. Andrews Co.* v. *Delight Spec. Sch. Dist.*, 95 Ark. 26, 128 S.W. 361 (1910). Our school laws unquestionably impose upon school boards the duty of providing orderly educational institutions. Scant imagination is required to think of innumerable situations in which the power of expulsion might be the school board's only effective means of protecting the student body from the disruptive, violent, or criminal actions of an incorrigibly intractable pupil.

The controlling principles are well stated by Professor Bolmeier in "The School in the Legal Structure," § 16.17 (2d ed., 1973):

The legal principle is also firmly established that school authorities may *expel* or *suspend* from school any pupil who disobeys a reasonable rule or regulation. School officials are clothed with considerable discretionary authority in determining whether or not a rule has been violated, and, in the event they conclude that a violation has occurred, they also have discretionary authority in determining the nature of the penalty to be imposed — providing it is not arbitrary or unreasonable. When, however, parents challenge the action of school boards as being beyond the bounds of reasonableness, litigation may develop.

There are a number of cases concerning pupil suspension and expulsion. The terms "suspension" and "expulsion" are sometimes used interchangeably. There is, however, considerable difference in the legal meaning of the two terms. "Suspension" is generally an act of a professional member of the school staff, whereas "expulsion" is a prerogative of the school board. Suspension is usually for a short period of time, or until the pupil conforms to the rule or regulation involved, whereas expulsion is usually permanent or substantially so.

The courts look somewhat askance at acts of suspension, and particularly at expulsion, as methods for forcing pupils' conformance to rules and regulations. Some incorrigible pupils violate school regulations for the very purpose of being removed from the school environment. It should be realized that when a pupil is denied school attendance he is deprived of education designed for his betterment. Of course when a pupil's misconduct or disobedience is of such a grave nature that his presence is disrupting to the school and detrimental to the morale of the student body, suspension, or even expulsion, is likely to be judicially condoned.

The courts have been reluctant to interfere with the authority of local school boards to handle local problems. Our position was well stated in *Safferstone* v. *Tucker*, 235 Ark. 70, 357 S.W. 2d ? (1962): "In this State a broad discretion is

vested in the board of directors of each school district in the matter of directing the operation of the schools and a chancery court has no power to interfere with such boards in the exercise of that discretion unless there is a clear abuse of it and the burden is upon those charging such an abuse to prove it by clear and convincing evidence." We cannot say that an abuse of discretion has been shown by the undisputed facts in the case at bar.

Affirmed.