HENDERSON STATE UNIVERSITY *v.* Joe SPADONI

CA 92-423 848 S.W.2d 951

Court of Appeals of Arkansas
Division II
Opinion delivered February 24, 1993

34

*McMillan, Turner & McCorkle*, by: *Ed McCorkle*, for appellant.

*Travis Mathis*, for appellee.

JOHN E. JENNINGS, Chief Judge. This is a school discipline case. The Clark County Chancery Court enjoined Henderson State University from suspending Joe Spadoni for the 1991-92 school year, holding that the university had denied Spadoni procedural due process. We reverse the chancellor's decision.

On September 22, 1991, Joe Spadoni struck a fellow student, Bobby Cullen, in the face with a beer bottle. The bottle broke and Cullen was cut rather severely on the nose and the arm. The injury to the arm required twenty-four staples; the injury to the nose required twelve stitches and a subsequent skin graft.

The incident took place in the street between the Henderson State University campus and the Phi Sigma Kappa fraternity house, of which Spadoni was a member. Bobby Cullen was a member of Sigma Phi Epsilon fraternity; the quarrel appears to have had its origin in inter-fraternity rivalry. There was conflicting evidence on whether Cullen struck Spadoni before the former was hit in the face with a bottle.

On October 1, 1991, Spadoni was notified by Associate Dean Robert Neal that he had been suspended from school. In accordance with school procedure, Spadoni immediately exercised his right to appeal to the university disciplinary committee.

A hearing was set for October 15, and before the hearing Spadoni was provided with the full text of all witnesses' statements. The committee was composed of four students and four faculty members. During the October 15 hearing, at which Spadoni was represented by an attorney, the committee heard the testimony of fourteen witnesses. After the four-hour hearing the committee voted six to zero with two abstentions to uphold the one

year suspension.

Mr. Spadoni promptly filed suit in Clark County Chancery Court seeking an injunction to prohibit the suspension. After a hearing held on December 10, 1991, the chancellor held that Spadoni had been denied his rights to procedural due process and permanently enjoined Henderson State from suspending him.

 There is no question but that the Due Process Clause of the Fourteenth Amendment to the United States Constitution gives rights to a student who faces expulsion for misconduct at a tax-supported college or university. *Dixon* v. *Alabama State Bd. of Educ.*, 294 F.2d 150 (5th Cir. 1961); *see also Goss* v. *Lopez*, 419 U.S. 565 (1975). Once it is determined that due process applies, the question remains what process is due. *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972). There is a general policy against intervention by the courts in matters best left to school authorities. "Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. . . . By and large, public education in our Nation is committed to the control of state and local authorities." *Goss* v. *Lopez*, 419 U.S. at 577, citing *Epperson* v. *Arkansas*, 393 U.S. 97 (1968). The courts have been reluctant to interfere with the authority of local school boards to handle local problems. *Fortman* v. *Texarkana Sch. Dist. No. 7*, 257 Ark. 130, 514 S.W.2d 720 (1974). A chancery court has no power to interfere with school district boards in the exercise of their discretion when directing the operation of the schools unless the boards clearly abuse their discretion. *Springdale Bd. of Educ.* v. *Bowman*, 294 Ark. 66, 740 S.W.2d 909 (1987). The burden is upon those charging such an abuse to prove it by clear and convincing evidence. *Bowman*, 294 Ark. at 71. Undoubtedly these general principles apply to disciplinary hearings for students at state supported universities and colleges.

 What procedural safeguards then are required in this context by the Due Process Clause? In *Goss* the Court said, "[T]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." 419 U.S. at 577; *Boykins* v. *Fairfield Bd. of Educ.*, 492 F.2d 697 (5th Cir. 1974), *cert. denied*, 420 U.S. 962 (1975). Flexibility and elbow room are to be preferred over specificity.

*Esteban* v. *Central Missouri State College*, 415 F.2d 1077 (8th Cir. 1969), *cert. denied*, 398 U.S. 965 (1970). Again in *Goss*, the Court said that a student facing suspension is entitled to, at the very minimum, "some kind of notice and . . . some kind of hearing." 419 U.S. at 579. *See also University of Houston* v. *Sabeti*, 676 S.W.2d 685 (Tex. Ct. App. 1984) (holding basic elements of due process are notice and a right to be heard). A full-dress judicial hearing is not required. *See Dixon* v. *Alabama State Bd. of Educ.*, 294 F.2d at 159.

The court's order states in part:

(3) That the Defendant, Henderson State University, failed to provide the Plaintiff due process in this case, and therefore, the preliminary injunction should be permanent and the University should allow the Plaintiff to continue his education at the University for the Fall term of 1991 and Spring term of 1992;

(4) The Court, in finding that the Plaintiff was not afforded due process, makes the following specific findings:

(a) That the hearing before the Disciplinary Committee did not afford the Plaintiff nor his witness the opportunity to give their entire testimony but was restricted to questions asked by the chairman;

(b) That the committee met behind closed doors with Dean Neal for approximately forty-five minutes prior to the hearing. In effect, the prosecutor met with the judges behind closed doors which smacks with impropriety;

(c) That George Staples, a member of Sigma Phi Epsilon Fraternity, served as an official member of the Disciplinary Committee. The committee as well as Mr. Staples, knew that the prosecuting witness, Bobby Cullen, was a member of Sigma Phi Epsilon and that Mr. Staples had a conflict of interest and should have disqualified from hearing the case;

(d) That Exhibit 14, a letter from faculty member Dr.

John Crawford addressed to Dr. Charles Dunn dated October 16, 1991, is further evidence that he observed the injustice that took place at the committee hearing and reported this to Dr. Dunn prior to his decision;

(e) That the suspension was not based upon the facts as set forth in this finding by the Court;

(f) That the University investigation was incomplete and one sided which clearly indicates that due process was not afforded;

(g) The University's action in this case and their actions involving athletic students indicates that the University has two standards that they apply in the same type of off campus activities.

IT IS, THEREFORE, CONSIDERED AND OR-DERED that the preliminary injunction is made permanent in that due process was denied to the Plaintiff and the University shall allow the Plaintiff to continue his education for the Fall term of 1991 and Spring term of 1992.

The chancellor's first finding, that the hearing unduly restricted Mr. Spadoni from presenting his side of the case, is clearly against a preponderance of the evidence. At the hearing in chancery court Spadoni admitted that the faculty did not prohibit him from presenting any evidence he wanted them to hear. The finding is apparently based on testimony that Spadoni's witnesses were required to testify in response to questions instead of being permitted to tell whatever they wanted to say, but this is normal procedure even in a judicial proceeding.

Similarly, the chancellor's finding that the suspension was "not based upon the facts" was clearly erroneous. The appellee admitted striking Bobby Cullen in the face with the beer bottle. His argument before the chancellor was that he was justified in doing so because Cullen hit him first. As stated previously, the evidence on this point was in conflict, but in any event this was a question of fact to be decided by the disciplinary committee. Likewise the court's findings that the investigation was "one sided and incomplete" and that "the University has two standards that

they apply in the same type of off campus activities" are simply not supported by the record.

The finding by the court that the disciplinary committee met with Dean Neal prior to the beginning of the hearing itself finds support in the evidence, but it is undisputed that the purpose of the meeting was to decide whether the hearing would be open or closed and whether the "Buckley Amendment" applied. In any event we cannot agree that the meeting resulted in a deprivation of the student's right to procedural due process. The chancellor's finding that committee member George Staples was a member of the same fraternity as Bobby Cullen is supported by the evidence, but again, we do not agree that this fact in and of itself constituted a denial of due process.

The chancellor also found that a letter from Dr. John Crawford, the faculty advisor for Mr. Spadoni's fraternity, "Is further evidence that he [Crawford] observed the injustice that took place at the committee hearing." In the letter, Dr. Crawford objected to the closing of the hearing, expressed dissatisfaction with the "attitude" of the committee, and expressed the opinion that both Cullen and Spadoni should be punished equally. The letter will not support a finding of a denial of procedural due process.

In the case at bar, Mr. Spadoni was provided reasonable notice of the specific charges against him. Before the disciplinary hearing he was provided with copies of the statements of witnesses. He was represented by counsel at the hearing. He was permitted to ask questions of the witnesses against him. He was permitted to speak in his own defense and to call witnesses, including character witnesses, in his own behalf.

We conclude that Mr. Spadoni was provided more than the "rudimentary elements of fair play" required by the Due Process Clause. *See Dixon* v. *Alabama State Bd. of Educ.*, 294 F.2d at 159. We therefore reverse the chancellor's decision to the contrary.

Reversed.

PITTMAN and COOPER, JJ., agree.