WYNNE PUBLIC SCHOOLS, Darrell Smith,
Gene Boeckman, John Smith, Carol Brown,
Kenneth Witcher, and Robert A. Hayes, Jr.,
Individually and In Their Official Capacities
*v.* Donna LOCKHART, as Parent and
Next Friend of Dominic Lockhart

CA 00–299                                         32 S.W.3d 47

Court of Appeals of Arkansas
Division IV
Opinion delivered November 29, 2000

*W. Paul Blume*, for appellants.

*Vandell Bland, Sr.*, for appellee.

JOHN F. STROUD, JR., Judge. On November 9, 1999, twelve-year-old Dominic Lockhart received a ten-day suspension from the Wynne Public Schools and was recommended for expulsion for the remainder of the 1999-2000 school year. At the conclusion of a hearing on November 22, 1999, the school district's board of education voted unanimously to accept the recommendation. Donna Lockhart, Dominic's mother and appellee in the present case, subsequently filed a petition for a temporary restraining order against Wynne Public Schools, its superintendents, and its board of directors. The trial court took no action on the petition, and the case proceeded to trial on the merits on December 6, 1999. After hearing testimony, the chancellor granted the injunction and ordered that Dominic be reinstated in school. The school district, superintendents, and school board now appeal, contending that the trial court erred in overturning the board's expulsion decision and in reinstating the student. We agree and reverse.

At the hearing conducted by the appellant school board, evidence was presented that there were forty-one disciplinary write-ups for Dominic concerning incidents from the beginning of the school year until November 8, 1999. Most of those incidents were for talking or mumbling. On November 8 Dominic was sent to the office because he disruptively argued with a teacher, insisting that Africa was a country rather than a continent. At some point after he left the office, Dominic went to his band class.

The band teacher, Lynn Sheppard, testified that on November 8, Dominic violated the no-tolerance band rule that no student could laugh at, put down, or criticize another student's ability to play an instrument. During the last five minutes of class, Sheppard

observed Dominic walk to the place where another student, Jessica, was playing the bells; he took a mallet from her and pounded the bells with it. Jessica took the mallet back from Dominic, who did not want to let it go, and the expression on the girl's face was such that Sheppard "could tell something had been said" that Jessica did not like. Dominic walked away, laughing. Because Jessica looked upset and had "brows furrowed," Sheppard asked her if there was a problem. Jessica answered that Dominic had told her she couldn't play the bells very well, that he could play much better than she could, and that he didn't know why she was put on the part. Sheppard testified that Dominic denied saying anything to Jessica, but that another band student, Tyler Rich, verified hearing the remarks.

Sheppard decided to take Dominic and Jessica to the principal's office to get the stories sorted out. In the hallway, Sheppard walked between the two students; the other band students, whom she could not leave alone in the classroom, walked behind. Dominic bolted from the hall to the doorway of the restroom, and Sheppard followed him. As soon as he unzipped his pants and she knew that he was not using the restroom as a way to hide, Sheppard turned around to wait at the entrance. When Dominic left the restroom, he bolted past her and got in line for the drinking fountain. From a distance of five feet, Sheppard told him not to get a drink, and told him that he was supposed to be going to the office. Dominic next attempted to turn down the wrong hallway, but he got stuck in congested pedestrian traffic and came to a standstill. Sheppard approached him from behind and put two fingers in the loop of his backpack.

Sheppard further stated that Dominic moved forward, looked around, and saw that his teacher "had a hold of" his backpack. He dropped the pack to the floor, put his hands against Sheppard's shoulders, and shoved her as hard as he could, causing her keys to fly fifteen feet in the opposite direction and hit a wall. He hit her several times in the upper body, with both open and closed fists. Next, he took a step backward and again clenched a fist. Sheppard averted a blow to her face, put her hands around his elbow, and told him to stop. He flung loose from her, enraged, and told her not to touch him again. After pushing her, Dominic again doubled a fist. Ms. Curtner (unidentified in testimony but apparently a teacher) stepped between them and told Dominic to stop. He screamed at

the top of his lungs for Curtner to "get out of his face" and not to touch him; Curtner quietly told him she was doing neither. Sheppard estimated her weight at about 309 pounds and Dominic's as 125. Sheppard testified that she observed Dominic pick up his backpack after Curtner intervened; he said that he didn't have to put up with "this" and that he was going home. He left through the front doors, and Coach Rich Trail followed him.

Jonathan Simmons, a friend of Dominic's who was in the band room at the time of the incident, also testified before the trial court. His version of events did not vary significantly from that told by Sheppard until the account of the physical encounter in the hallway. Jonathan said that Sheppard grabbed Dominic's arm, that Dominic jerked away, but that there was no punching or slapping. He said that there was only hand fighting, which he described as "I've got your hands, you've got mine, and I'm trying to get loose or you're trying to get loose." Jonathan also said that he had no knowledge of Dominic's hitting Sheppard, but that Dominic argued sometimes and talked too much.

Coach Trail testified that he left the office to help when a teacher ran in saying someone was needed. He saw Dominic "going berserk" in the hallway, "hollering and screaming." Dominic left the building and Trail followed, repeatedly telling him to stop and once telling him that he was going to jail. Trail stopped Dominic by wrapping his arms around him and taking him gently to the ground. Trail said that he used his leg to trip Dominic and got on top of him because he was going to try to leave. Dominic said he would have his father beat up Trail; he also said that he, Dominic, would hit Trail in the face and would kill him.

Darryl Mills, principal of Wynne Junior High School, testified that he didn't usually handle discipline but had at times talked to Dominic to find out what was going on and to see what would help. Dominic and his mother had refused Mills's request that Dominic meet with the school counselor, saying that he had his own counselor. Earlier in the day on the date of the band room incident, Mills had received Dominic's permission to check his backpack (after a teacher reported hearing a "click" while Dominic was in the bathroom). Mills did not see the incident with Sheppard, but he responded to an intercom request for principals to go to the front of the building. He saw Trail on the ground with his right leg

across Dominic's legs. Dominic, who was struggling, said, "Get out of my face"; he told Trail that Dominic's daddy would whip Trail's butt; and he said two or three times, "You let me up from here, and I'll kill you." After Mills told Trail to release Dominic, the boy got up and left the school grounds. Mills testified that Dominic was suspended for disrespect to teachers, refusing to go to the office, and attempting to leave the grounds, and that Mills recommended Dominic's expulsion because of the violence and the threats.

Joseph David Stepp, assistant principal assigned to discipline, testified that he followed Dominic into the restroom one day when Stepp needed to give him a letter and get back to the office. After telling Dominic that they needed to talk, Stepp waited in the part of the bathroom where Dominic was in a stall with the door closed. Dominic was fidgeting with something in the stall the whole time that Stepp was there. Stepp heard a clicking noise and could see that Dominic was holding a black instrument with a cord. Dominic eventually came out of the stall, and Stepp took him to the office, where he asked Mr. Mills to step in. Dominic had batteries in his hand. The principals received Dominic's permission to look in his backpack. They found a hairbrush but found no such item as a radio, which is a prohibited item at the school.

Dominic's mother testified that on November 8, she had gone to school because during the previous week "they had my little boy in and out of the office continuously," but that she got the run-around when she inquired about it. She said that at the beginning of the year she had asked to be notified if Dominic were sent to the office. She said she had started a community awareness group and had been talking to parents and children. She disputed the validity of all but nine of the forty-one warnings and said that she believed her son's teachers and administrators were spending so much time on Dominic "to ruin him." She said that she did not believe that attacking a teacher, hitting the teacher with an open hand or closed fist, and threatening to kill the teacher constituted a reasonable basis to expel a student from school.

The trial court ruled that appellee proved by clear and convincing evidence that appellants abused their discretion in expelling Dominic from school for the remainder of the school year. On the basis of that ruling, appellants were directed to readmit him imme-

diately. The trial court's conclusion, written in a letter opinion that was incorporated into the final order, reads as follows:

> [T]he ten (10) day suspension of the student was clearly an appropriate response to this particular situation and this particular student . . . . The court is convinced that had the child not been tackled and thrown to the ground by Coach Trail, the unfortunate words that the angry and frustrated boy directed toward him would never have been uttered.
>
> The Court is also mindful that Dominic's parents have placed him into counseling to learn to deal with this behavior. The additional discipline of expulsion is a gross abuse of discretion in this instance and not appropriate taking into consideration all factors. It is not the role of the Court to write or rewrite the school's policies, nor does this Court propose to do that. Where there is a policy in place, however, the school's officials must adhere to it. They should also consider employing a bit of common sense. We expect childish, immature, unwise and ill-considered actions from children. As a result, we impose adult supervision on them and we try to teach them better. The best instruction is usually by example. The adults here have almost unanimously missed the mark by a rather wide margin.

Appellants contend that the trial court ignored its proper role in reviewing the school board's decision and substituted its judgment for that of the board, an act which is prohibited by law and which is a flagrant abuse of discretion. As appellants note, Ark. Code Ann. § 6-18-506(c) (Repl. 1999) requires school boards to hold pupils strictly accountable for disorderly conduct in school and on the school grounds. Appellants also rely upon the following observations from *Henderson State University v. Spadoni*, 41 Ark. App. 33, 35, 848 S.W.2d 951, 953 (1993):

There is a general policy against intervention by the courts in matters best left to school authorities. "Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint . . . . By and large, public education in our Nation is committed to the control of state and local authorities." *Goss v. Lopez*, 419 U.S. at 577, citing *Epperson v. Arkansas*, 393 U.S. 97 (1968). The courts have been reluctant to interfere with the authority of local school boards to handle local problems. *Fortman v. Texarkana Sch. Dist. No. 7*, 257 Ark. 130, 514 S.W.2d 720 (1974). A chancery court has no power to interfere with school district boards

in the exercise of their discretion when directing the operation of the schools unless the boards clearly abuse their discretion. *Springdale Bd. of Educ. v. Bowman*, 294 Ark. 66, 740 S.W.2d 909 (1987). The burden is upon those charging such an abuse to prove it by clear and convincing evidence. *Bowman*, 294 Ark. at 71.

*Fortman v. Texarkana Sch. Dist. No. 7*, *supra*, which was cited by the *Spadoni* court, gives further guidance on the review of a school board's decision to expel a student:

> The controlling principles are well stated by Professor Bolmeier in "The School in the Legal Structure," 16.17 (2d ed., 1973):
>
>> The legal principle is also firmly established that school authorities may expel or suspend from school any pupil who disobeys a reasonable rule or regulation. School officials are clothed with considerable discretionary authority in determining whether or not a rule has been violated, and, in the event they conclude that a violation has occurred, they also have discretionary authority in determining the nature of the penalty to be imposed – providing it is not arbitrary or unreasonable. When, however, parents challenge the action of school boards as being beyond the bounds of reasonableness, litigation may develop.
>>
>> . . . .
>>
>> The courts look somewhat askance at acts of suspension, and particularly at expulsion, as methods for forcing pupils' conformance to rules and regulations . . . . It should be realized that when a pupil is denied school attendance he is deprived of education designed for his betterment. Of course when a pupil's misconduct or disobedience is of such a grave nature that his presence is disrupting to the school and detrimental to the morale of the student body, suspension, or even expulsion, is likely to be judicially condoned.
>
> The courts have been reluctant to interfere with the authority of local school boards to handle local problems. Our position was well stated in *Safferstone v. Tucker*, 235 Ark. 70, 357 S.W.2d 3 (1962): "In this State a broad discretion is vested in the board of directors of each school district in the matter of directing the operation of the schools and a chancery court has no power to interfere with such boards in the exercise of that discretion unless

there is a clear abuse of it and the burden is upon those charging such an abuse to prove it by clear and convincing evidence."

257 Ark. at 132-34, 514 S.W.2d at 721.

Appellee contends that the appellant school district failed to follow its own procedural guidelines. Appellee's brief advances the argument that Dominic did not disturb class and that he was disciplined for an infraction that the principal admitted was not an infraction. Our review of the principal's abstracted testimony shows that Mills, under questioning by Dominic's attorney, actually stated, "I'm not sure I would consider it a disturbance from the words you said about seeing another student saying something to a student, walking away and the other student has a furrowed brow. I would have to weigh the entire situation." He further testified that disturbing class could be anything from talking to drumming on his desk, and that Dominic was "using drumsticks." Finally, Mills testified that his recommendation for expulsion was based on "the violence and the threats."

Appellee states that in a juvenile proceeding Dominic was found not guilty of battery charges filed by the teacher, but there is no abstract reflecting the judgment or showing that such an argument was raised at trial. Nor does the abstract show development below of another argument presented by appellee on appeal, that of racial prejudice. The appellate court declines to reach arguments not presented to the trial court below. *Woodend v. Southland Racing Corp.*, 337 Ark. 380, 989 S.W.2d 505 (1999).

Here, the incident in the band room was no more than a classroom violation, and its only bearing on this case is that it was the reason for an escorted trip to the principal's office. We think that the infraction, trivial as it was, did justify the trip to the principal's office. The basis for the expulsion was the violence and threats that occurred in the hallway and on the school grounds. We, therefore, agree with the appellant school board that the trial court interfered with the board's resolution of this unfortunate incident involving Dominic. There was evidence before the board that Dominic hit one teacher several times, threatened a coach with a beating by a parent, and said that if he could get up he would kill the coach. Therefore, we find that the trial court erred in finding that appellee proved by clear and convincing evidence that appel-

lants abused their discretion in expelling Dominic from school for the remainder of the school year.

Reversed.

JENNINGS and BIRD, JJ., agree.