Cite as 2022 Ark. 80

# SUPREME COURT OF ARKANSAS

**No.** CV-21-498

|  |  |
|---|---|
| BENTONVILLE SCHOOL DISTRICT; DR. DEBBIE JONES, SUPERINTENDENT, IN HER OFFICIAL CAPACITY; ERIC WHITE, SCHOOL BOARD PRESIDENT, IN HIS OFFICIAL CAPACITY; MATT BURGESS, BOARD MEMBER, IN HIS OFFICIAL CAPACITY; KELLY CARLSON, BOARD MEMBER, IN HIS OFFICIAL CAPACITY; BRENT LEAS, BOARD MEMBER, IN HIS OFFICIAL CAPACITY; WILLIE COWGUR, BOARD MEMBER, IN HIS OFFICIAL CAPACITY; JOE QUINN, BOARD MEMBER, IN HIS OFFICIAL CAPACITY; AND JENNIFER FADDIS, BOARD MEMBER, IN HER OFFICIAL CAPACITY<br><br>APPELLANTS<br><br>V.<br><br>MATT SITTON, MATTHEW BENNETT, AND ELIZABETH BENNETT<br><br>APPELLEES | **Opinion Delivered:** April 14, 2022<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. 04CV-21-2181-5]<br><br>HONORABLE XOLLIE DUNCAN, JUDGE<br><br><br><br><br><br><br><br><br><br><br><br><br><br>REVERSED AND REMANDED. |

**JOHN DAN KEMP, Chief Justice**

Appellants Bentonville School District and Dr. Debbie Jones, Superintendent, Eric

White, Matt Burgess, Kelly Carlson, Brent Leas, Willie Cowgur, Joe Quinn, and Jennifer

Faddis, in their official capacities (collectively "the District"), have filed an interlocutory

appeal from a Benton County Circuit Court order enjoining the enforcement of the

District's mask policy in favor of appellees Matt Sitton, Matthew Bennett, and Elizabeth Bennett (collectively, "the parents"). For reversal, the District argues that the circuit court abused its discretion in ruling that (1) the District's mask policy violated the parents' constitutional rights to care for their children pursuant to article 2, sections 21 and 29 of the Arkansas Constitution; (2) the District lacked authority to issue its school policy; (3) the parents suffered irreparable harm; and (4) a justiciable controversy existed. We reverse the circuit court's temporary restraining order (TRO) and remand to the circuit court for the entry of an order consistent with this opinion.

## I. *Facts*

During the summer of 2021, the highly contagious Delta variant swept across the country, and COVID-19 cases increased dramatically in Arkansas.[1] On August 11, 2021, the Bentonville School District Board ("Board") convened to consider implementing a mask policy to combat the spread of COVID-19 among its students. According to the sworn affidavit of the superintendent, Dr. Debbie Jones, the Board heard statements from parents, students, physicians, medical professionals, and representatives of the Arkansas Department of Education (ADE) and the Arkansas Department of Health (ADH). After deliberations, the Board promulgated Emergency Policy EP 1.3.21 ("the policy"), entitled "Wearing of

---

[1]In April 2021, the Arkansas General Assembly passed Act 1002 of 2021, which prohibited state and local governments from requiring persons to wear masks during the ongoing COVID-19 pandemic. On August 6, 2021, the Pulaski County Circuit Court enjoined Act 1002 in a separate mask-mandate case, *McClane v. Arkansas*, No. 60CV-21-4692 (Pulaski Cnty. Cir. Ct. Aug. 6, 2021). The applicability of Act 1002 is not at issue in the present appeal.

Face Masks and Face Coverings," for the 2021–2022 school year. Specifically, the policy

stated:

> All students age three (3) through the 12th grade shall be required to wear a mask or face covering (a) while attending school or an indoor school function in any school building, District facility, or (b) when riding in school-provided transportation. All masks and face coverings must cover the nose and mouth of the student. Students shall wear masks and face coverings at all times except for the following:
>
> • Students may remove masks and face coverings while outdoors;
>
> • Students may remove masks and face coverings for eating or drinking;
>
> • Students may remove masks and face coverings when appropriate physical distancing measures are in place as determined by a Bentonville Schools staff member;
>
> • Students may remove masks and face coverings on a case-by-case basis for specific instructional needs, including physical education activities, as determined by a teacher, in which case the teacher will require appropriate physical distancing measures to the extent possible;
> • Students may remove masks and face covering while participating in athletic activities where a six feet distance is not achievable, but a mask is inhibitory to the activity or Students['] active exercise;
>
> •May be exempted from this Emergency Policy due to special behavioral or individualized needs as determined by the Executive Director of Special Services or the Executive Director of Student Services. ★A physician's note stating the student should not be required to wear a face covering due to a medical condition or disability shall be provided to the school principal to allow for exemption; or
>
> •Students may be exempted from this Emergency Policy by the school principal due to a documented medical condition or disability of the student.

https://go.boarddocs.com/ar/bentonville/Board.nsf/Public# (choose "Policies" from menu bar; then choose "Section 1. Board Governance and Operations (EP 1.3.21), archived at https://perma.cc/4ZC6-DAVW.

The policy further stated that the Board "shall review the face mask policy at every

regular Board of Education meeting, beginning with the September 2021 regular Board of

Education meeting, to determine policy continuance." *Id*. By periodically reviewing the

3

policy, the Board would determine whether "[t]he school district has a fourteen-day coronavirus (COVID-19) infection rate of at least fifty (50) new known infections per ten thousand (10,000) residents of the public school district based on the most recent data published by the [Arkansas] Department of Health or the Arkansas Center for Health Improvement." *Id.* The Board would also consider "[t]he availability of vaccinations for those [students] below 12 years of age." *Id.* The District's policy evolved from its Safe Schools Plan[2], which referenced both the ADH directives and the Centers for Disease Control and Prevention (CDC) guidelines, which applied to the 2021–2022 academic year.

On September 10, 2021, the parents filed a petition for declaratory judgment and damages in the Benton County Circuit Court.[3] In their petition, the parents asserted that the policy violated their constitutional rights guaranteed by article 2, sections 21 and 29 of the Arkansas Constitution and the Arkansas Civil Rights Act of 1993 (ACRA). They sought declaratory relief, a permanent injunction prohibiting enforcement of the policy, and damages under the ACRA.

The parents also moved for a TRO and sought to temporarily enjoin the District's policy. The District opposed the TRO motion, arguing that the parents had not demonstrated that the policy violated a fundamental right and had failed to demonstrate a likelihood of success on the merits. After a hearing on the matter, the circuit court entered an injunction order on October 12, 2021, and ruled that "the district policy violates the

---

[2]*Bentonville Schools, Safe Schools Plan*, https://www.bentonvillek12.org/domain/6379 archived at https://perma.cc/HDT7-PPCW.

[3]The parents previously filed the action in federal court and later moved to dismiss it before filing in state court.

Plaintiffs' constitutional rights and was enacted without proper authority and is enjoined." The District timely appealed. We therefore have jurisdiction of this appeal pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(6).

## II. *Mootness*

As a threshold matter, we must address whether the instant appeal is moot. Both parties acknowledge in their briefs that the District's policy "lapsed" days after the circuit court's order in October 2021 because of a decline in the local COVID-19 infection rates. The District contends that the instant appeal falls under one of the mootness exceptions as capable of repetition yet evading review because "[the policy] may be revived" and "could again be implemented" if the COVID-19 infection rates rise again. The parents also claim that the case falls under a mootness exception because the District's authority "waxes and wanes based on an arbitrary number of active infections" in the community.

As a general rule, this court will not review issues that are moot. *Ark. Dep't of Hum. Servs. v. Ledgerwood*, 2019 Ark. 100, at 2, 571 S.W.3d 1, 2. To do so would be to render advisory opinions, which this court will not do. *Id.*, 571 S.W.3d at 2. A case is moot when any judgment rendered would not have any practical legal effect upon a then-existing legal controversy. *Id.*, 571 S.W.3d at 2. In other words, a moot case presents no justiciable issue for determination by the court. *Id.*, 571 S.W.3d at 2. We also may not issue advisory opinions in anticipation of future litigation. *Walker v. McCuen*, 318 Ark. 508, 516, 886 S.W.2d 577, 582 (1994). Courts do not sit for the purpose of determining speculative and abstract questions of law or laying down rules for future conduct. *Flow Doc, Inc. v. Horton*, 2009 Ark. 411, at 6, 334 S.W.3d 865, 870.

5

This court has repeatedly held that changes in the law may render claims moot. *Hutchinson v. Armstrong*, 2022 Ark. 59, at 6, ___ S.W.3d ___, ___; *City of Clinton v. S. Paramedic Servs., Inc.*, 2012 Ark. 88, at 10, 387 S.W.3d 137, 142 (stating that "any opinion handed down by this court based on repealed ordinances and a nonexisting franchise procedure would simply be an advisory opinion"); *Warren Wholesale Co., Inc. v. McLane Co., Inc.*, 374 Ark. 171, 174, 286 S.W.3d 709, 710–11 (2008) (holding that the issue was moot after the entry of the circuit court's order because the board promulgated a new regulation and repealed the version challenged by the declaratory-judgment action).

Here, the parents challenge the policy promulgated by the Board. The policy states that the "Board shall review the face mask policy at every Board of Education meeting, beginning with the September 2021 regular Board of Education meeting, to determine policy continuance." But both the District and the parents have acknowledged to this court that the policy "lapsed" in October 2021 shortly after the circuit court entered its order. Because the circuit court relied on the now-lapsed policy in its order, the grounds on which the circuit court entered its TRO have been rendered moot. *See Armstrong*, 2022 Ark. 59, at 6, ___ S.W.3d at ___.

### III. *Mootness Exception*

Next, we must determine whether the case falls under a mootness exception. We have recognized two exceptions to the mootness doctrine for (1) issues that are capable of repetition yet evade review, and (2) issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. *Convent Corp. v. City of North Little Rock*, 2021 Ark. 7, at 13, 615 S.W.3d 706, 714. We retain the choice as to whether

we may elect to settle an issue that is moot. *Duhon v. Gravett*, 302 Ark. 358, 360, 790 S.W.2d 155, 156 (1990).

The second exception applies in the case before us. The two-pronged inquiry is whether (1) a substantial public interest exists in the issues being considered and (2) this court in addressing such issues, despite being otherwise moot, would prevent future litigation. Both prongs have been met in this case. We acknowledge an unquestionable substantial public interest in the health, welfare, and safety of Arkansas's school-age children amidst the unprecedented global COVID-19 pandemic. Further, in an effort to prevent piecemeal, district-by-district litigation as Arkansas schools review their policies vis-à-vis future, emerging COVID-19 variants during this ongoing pandemic, we consider the issues presented in this appeal. Thus, we hold that the case falls squarely within the substantial-public-interest mootness exception.

## IV. *Temporary Restraining Order*

On appeal, the District argues that the circuit court abused its discretion in granting the parents' motion for TRO and enjoining the District's policy. It contends that (1) the parents have failed to establish that their constitutional rights have been violated and (2) it was authorized to implement a policy that promoted its students' health and safety, advanced student achievement, and facilitated in-person instruction.

Rule 65 of the Arkansas Rules of Civil Procedure governs the issuance of TROs. In determining whether to issue a TRO pursuant to Rule 65, a circuit court must consider two issues: (1) whether irreparable harm will result in the absence of an injunction or restraining order and (2) whether the moving party has demonstrated a likelihood of success

7

on the merits. *Ledgerwood*, 2017 Ark. 308, at 7, 530 S.W.3d at 342. The issuance of a TRO is a matter addressed to the sound discretion of the circuit court. *Id*. at 8, 530 S.W.3d at 342. We will not reverse the circuit court's ruling unless there has been an abuse of discretion. *Id*., 530 S.W.3d at 342.

## A. Justiciability

As an initial matter, the District urges this court to reverse the circuit court's TRO and dismiss the parents' petition because the claims are not justiciable. The parents filed a declaratory-judgment action pursuant to Arkansas Code Annotated section 16-111-101 et seq. (Repl. 2016 & Supp. 2021). A party seeking a declaratory judgment must demonstrate a justiciable controversy. *Monsanto Co. v. Ark. State Plant Bd.*, 2021 Ark. 103, at 8, 622 S.W.3d 166, 172. A case is nonjusticiable when any judgment rendered would have no practical legal effect upon a then-existing legal controversy. *Id*., 622 S.W.3d at 172.

In the case at bar, the circuit court has not ruled on the parents' underlying declaratory-judgment action, but it granted the parents' motion for TRO. In doing so, the circuit court found that the parents demonstrated a likelihood of success on the merits of their claims, in part, because the District had allegedly violated the parents' constitutional rights by implementing its policy. A party is not required to prove his or her case in full at a preliminary-injunction hearing. *Thurston v. Safe Surgery Ark.*, 2021 Ark. 55, at 11, 619 S.W.3d 1, 9. Accordingly, we conclude that the parents present a justiciable controversy. For these reasons, we reject the District's argument.

B. Likelihood of Success on the Merits

We now turn to whether the parents, as the moving parties, have demonstrated a likelihood of success on the merits. This court has held that to justify a grant of TRO relief, a plaintiff must establish that it will likely prevail on the merits at trial. *Id*. at 13, 619 S.W.3d at 10. The test for determining the likelihood of success is whether there is a reasonable probability of success in the litigation. *Id*., 619 S.W.3d at 10. This court will not delve into the merits of the case further than is necessary to determine whether the circuit court exceeded its discretion in granting the injunction. *Villines v. Harris*, 340 Ark. 319, 323, 11 S.W.3d 516, 519 (2000).

1. *Constitutional rights*

The gravamen of the parents' petition and underlying action seeking declaratory judgment is that the policy violated the parents' fundamental liberty interest in the care, custody, and maintenance of their children, pursuant to article 2, sections 21 and 29 of the Arkansas Constitution.[4] In their petition, the parents alleged that they "have the constitutional right to refuse to place face coverings on their well children" and that the "enforcement of the face coverings mandate as contained in [the policy] . . . should be

---

[4]Article 2, section 21 of the Arkansas Constitution provides, "No person shall be taken, or imprisoned, or disseized of his estate, freehold, liberties or privileges; or outlawed, or in any manner destroyed, or deprived of his life, liberty or property; except by the judgment of his peers, or the law of the land; nor shall any person, under any circumstances, be exiled from the State." Article 2, section 29 provides, "This enumeration of rights shall not be construed to deny or disparage others retained by the people; and to guard against any encroachments on the rights herein retained, or any transgression of any of the higher powers herein delegated, we declare that everything in this article is excepted out of the general powers of the government; and shall forever remain inviolate; and that all laws contrary thereto, or to the other provisions herein contained, shall be void."

permanently enjoined." Further, in their motion for TRO, the parents claimed that the policy "was issued without legal authority, in violation of the [parents'] fundamental liberty interests as parents in the care, custody and maintenance of their children secured by Article 2, Section 21 and Section 29 of the Arkansas Constitution" and that they were "entitled to their fundamental liberty interests as parents in making the ultimate decisions regarding the health and well-being of their children, which rights [were] being denied or disparaged by [the District]."

The Supreme Court of the United States has long provided a framework applicable "in the context of a public health crisis." *In re Rutledge*, 956 F.3d 1018, 1027 (8th Cir. 2020) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11 (1905)). That two-part framework is set forth as follows:

> [I]n the context of a public health crisis, a state action is susceptible to constitutional challenge only if it, "purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law[.]"

*Rutledge*, 956 F.3d at 1027–28 (citing *Jacobson*, 197 U.S. at 31).

In reviewing the two-part *Jacobson* framework, we must first determine whether the District's policy has a "real or substantial relation," *Rutledge*, 956 F.3d at 1027, to the public-health crisis caused by the COVID-19 pandemic. Here, in the "Face Coverings" section of its Safe Schools Plan, the District acknowledged that "[t]he CDC currently recommends . . . the wearing of masks in school settings[.]" Additionally, the District emphasized in its Safe School Plan that it followed the policy recommendations of its Reopening Task Force, which was composed, in part, of medical professionals; its Personnel Policy Committee; the

10

District Administration; and the directives of ADH and the Governor. Further, Superintendent Jones stated in her affidavit that the Board had heard from "parents, students, and medical professionals, including several pediatricians and family practitioners who favored implementing a mask policy," and that she recommended the policy based on recommendations from the CDC, the American Academy of Pediatrics, and the ADE. Thus, we conclude that the District's policy supports a "real or substantial relation" to protecting the students' health during the COVID-19 pandemic.

The second *Jacobson* inquiry is whether the District's policy was "beyond all question, a plain, palpable invasion" of the parents' rights. *Id.* at 1027. Parents do have a liberty interest in shaping their child's education. *Wisconsin v. Yoder*, 406 U.S. 205, 234–35 (1972) (invalidating a Wisconsin statute requiring Amish children to attend public school to age sixteen against the wishes of the parents). But the Court has also held that our government "has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare[.]" *Prince v. Massachusetts*, 321 U.S. 158, 167 (1944). In *Prince*, the Court stated, "Acting to guard the general interest in youth's well being, the state as *parens patriae* may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways." *Id.* at 166. The Court has repeatedly "stressed . . . that schools at times stand *in loco parentis*, *i.e.*, in the place of parents." *Mahanoy Area Sch. Dist. v. B.L.*, ___ U.S. ___, ___, 141 S. Ct. 2038, 2044–45 (2021) (citing *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986)). Thus, in light of this precedent and without delving into the underlying merits of the parents' ongoing claims, we hold that the

11

District's policy is not, "beyond all question, a plain, palpable" violation of the parents' constitutional rights to care for their children.

## 2. *District's authority*

Next, the parents' petition alleged that the District lacked the authority to issue its policy. In their prayer for relief, the parents stated that the "face coverings mandate . . . is void and unenforceable as having been issued [by the District] without legal authority[.]" Additionally, in their motion for TRO, the parents stated, "[G]iven that [the District] acted illegally in issuing [its policy] on August 11, 2021 to include the face coverings mandate generally applicable to all students despite the adverse will of the parents, [the parents] have herein demonstrated the likelihood of success on the merits in their underlying matter."

The Arkansas Constitution states that "the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education." Ark. Const. art. 14, § 1. This court has held that school districts are political subdivisions of the state. *Dermott Special Sch. Dist. v. Johnson*, 343 Ark. 90, 95, 32 S.W.3d 477, 480 (2000); *Walt Bennett Ford v. Pulaski Cnty. Special Sch. Dist.*, 274 Ark. 208, 212, 624 S.W.2d 426, 428 (1981). As creatures of statute, school districts may only act through a board of directors. *F.E. Compton & Co. v. Greenwood Sch. Distr. No. 25*, 203 Ark. 935, 159 S.W.2d 721 (1942).

In *Fortman v. Texarkana School District No. 7*, 257 Ark. 130, 514 S.W.2d 720 (1974), this court stated that school directors have "implied powers as well as express ones." We also stated that "school directors are authorized, not only to exercise the powers that are expressly granted by statute, but . . . [s]uch powers will be implied when the exercise thereof

is clearly necessary to enable them to carry out and perform the duties legally imposed upon them." *Id.* at 132, 514 S.W.2d at 722 (quoting *A.H. Andrews Co. v. Delight Special Sch. Dist.*, 95 Ark. 26, 128 S.W. 361 (1910)). We opined that "[i]n this State a broad discretion is vested in the board of directors of each school district in the matter of directing the operation of the schools[.]" *Fortman*, 257 Ark. at 133–34, 514 S.W.2d at 722 (quoting *Safferstone v. Tucker*, 235 Ark. 70, 357 S.W.2d 3 (1962)). *See* Ark. Code Ann. § 6-15-1002 (Supp. 2019) (providing that school districts "must provide a safe, efficient, and accountable program").

Further, our statutes allow for a school's broad authority to determine its policies. Arkansas Code Annotated section 6-13-620(11) (Supp. 2019) authorizes the Board to "provide no less than a general, suitable, and efficient system of free public schools . . . [and] [d]o all other things necessary and lawful for the conduct of efficient free public schools in the school district." Ark. Code Ann. § 6-13-620(11); *see also* Ark. Code Ann. § 6-15-1005(a)(1) (Supp. 2019) (providing that schools must have "safe and functional facilities"). Based on this precedent, we conclude that the District properly authorized its policy.

Without delving into the underlying merits of the parents' ongoing claims, we conclude that the parents, as the moving parties, have failed to demonstrate a likelihood of success on the merits. Thus, we hold that the circuit court abused its discretion in finding that "the district policy violates the Plaintiffs' constitutional rights and was enacted without proper authority[.]"

### C. Irreparable Harm

We now consider whether irreparable harm will result in the absence of the TRO. Irreparable harm is "the touchstone of injunctive relief." *Safe Surgery Ark.*, 2021 Ark. 55, at

19, 619 S.W.3d at 13. Further, harm is normally considered irreparable only when it cannot be adequately compensated by money damages or redressed in a court of law. *Id.*, 619 S.W.3d at 13. Here, the circuit court ruled that "[i]f the [District had] that authority [to implement its policy], the [parents] have failed to show irreparable harm, they have failed to show likelihood of success on the merits." Because we hold that the District had the authority to promulgate its policy and that the policy did not violate the parents' fundamental rights, we conclude that the parents failed to show that irreparable harm will result in the absence of a TRO.

V. *Conclusion*

We hold that the circuit court abused its discretion in granting the parents' motion for TRO. Accordingly, we reverse and remand for the entry of an order consistent with this opinion.

Reversed and remanded.

Special Justice HOWARD W. BRILL joins.

WOMACK, J., and Special Justice HOWARD W. BRILL concur.

WEBB, J., dissents.

WOOD, J., not participating.

**SHAWN A. WOMACK, Justice, concurs.** I agree with the majority that the grounds on which the circuit court entered its temporary restraining order have been rendered moot now that the Bentonville School District's mandatory mask policy has lapsed. However, I disagree with the majority's conclusion that the substantial-public-interest exception is fully

14

satisfied in this case. In my view, neither exception to the mootness doctrine is applicable here, and I would reverse and dismiss.

We have recognized two exceptions to the mootness doctrine, the first of which involves issues that are capable of repetition yet evade review. *Protect Fayetteville v. City of Fayetteville*, 2019 Ark. 28, at 4, 566 S.W.3d 105, 108. The central question in this case is whether the District has authority to issue a district-wide policy mandating that students wear face masks while at school. This question does not evade review because it will be addressed by this court in a separate appeal involving mask mandates, *McClane v. Arkansas*, No. 60CV-21-4692 (Pulaski Cty. Cir. Ct. Jan. 28, 2022) (notice of appeal filed). In *McClane*, the Pulaski County Circuit Court entered an order finding Act 1002 of 2021, which prohibited schools from requiring students to wear masks, unconstitutional on multiple grounds. Thus, our review of Act 1002's constitutionality will in turn determine whether the District has authority to implement a mask policy.

The second exception to mootness involves matters of substantial public interest, which, if addressed, would prevent future litigation. *Terry v. White*, 374 Ark. 387, 393, 288 S.W.3d 199, 203 (2008). This exception has two prongs: (a) that there be a substantial public interest in the issues being considered *and* (b) that addressing such issues, despite their being otherwise moot, would prevent future litigation. *Wilson v. Walther*, 2017 Ark. 270, at 14, 527 S.W.3d 709, 717 (Womack, J., concurring in part and dissenting in part). To be sure, there exists a substantial public interest in the policies promulgated by local school districts, especially as they pertain to student health. Nevertheless, as discussed above, a separate appeal is pending on whether the General Assembly's act banning mask mandates

15

in schools is constitutional. Therefore, addressing the issues raised in the present appeal will not prevent future litigation. I would hold that this appeal is moot based on the lapsed policy.

Respectfully, I concur.

**Special Justice HOWARD W. BRILL, concurs.** I concur with the majority opinion. I write separately to further address the constitutional question that is raised in this appeal of a preliminary injunction; namely, the constitutional rights of the parents when the Bentonville school board imposed this mask mandate on their children. For this court to affirm the preliminary injunction, the parents must demonstrate a likelihood of success on the merits.

The substantive aspect of the Due Process Clause protects "the liberty right of a parent to have and raise children." *Linder v. Linder*, 348 Ark. 322, 342, 72 S.W.3d 841, 852 (2002). That liberty interest includes "shaping a child's education." *Id*. Accordingly, a State cannot mandate that a child attend a public school against the wishes of the parent. *Wisconsin v. Yoder*, 406 U.S. 205 (1972). The Clause protects "the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (parent objecting to grandparent visitation).

This court has held that parental rights are protected by the Due Process Clauses of the Fourteenth Amendment and Art. 2, Section 8 of the Arkansas Constitution. *Davis v. Smith*, 266 Ark. 112, 583 S.W.2d 37 (1979). Those rights extend to the upbringing of their children. *Id*. But "parental rights are not, however, beyond limitation in the public interest." *Id*. at 117–18, 538 S.W.2d at 40.

16

Much of the case law that has developed in regard to parental rights comes from settings outside the public school, such as termination of parental rights, *Davis*, 266 Ark. 112, 583 S.W.3d 37, and objections to visitations by grandparents. *Troxel v. Granville*, 530 U.S. 57 (2000). Those cases, which involve "the private realm of the family," *Linder*, 348 Ark. at 345, 72 S.W.3d at 853, have limited relevance and do not answer the issue of a school policy impacting school children on school property during school hours.

The narrow issue here is whether the parental right supersedes or trumps the authority, both express and implied, of an elected school board to make the detailed decisions as to the operation of the schools. Although the parameters of the right may be uncertain, it is clear, and both parties agree, that the parent's right to control a child's education is neither absolute nor unqualified. *Murphy v. State of Arkansas*, 852 F.2d 1039 (8th Cir. 1988) (standardized testing for home-schooled children); *Swanson v. Guthrie Indep. Sch. Dist. No. 1-L*, 135 F.3d 694 (10th Cir. 1998) (policy on part-time attendance). "Parents simply do not have a constitutional right to control each and every aspect of their children's education." *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 966 (8th Cir. 2015) (school board elected not to participate in state school-choice-transfer option).

Parents have a right to be informed about the education of their children and have a right to be heard on school matters, such as curriculum, textbooks, and masks. But the right to be kept informed and the right to be heard are fundamentally different from a right to make the decision themselves or a right to selectively abide by some decisions.

Parents do not have a constitutional right to micromanage the operation of the schools. The school board decides whether to impose a dress code, whether to have indoor

17

or outdoor physical activities, whether to prohibit certain attire, whether to have a longer or shorter lunch period, when to give examinations, whether to offer extracurricular activities, whether to offer agriculture or sports-medicine programs, and whether, in the interest of public health, to require masks. If parents are dissatisfied with the school board decisions, they have a remedy. It is the ballot box.

**BARBARA W. WEBB, Justice, dissents.** A temporary restraining order is not supposed to be reversed on appeal unless there is an abuse of discretion. *City of Jacksonville v. Smith*, 2018 Ark. 87, at 5–6, 540 S.W.3d 661, 666 (2018) (citing *Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (2006)). We are not supposed to delve into the merits of the case further than is necessary to determine whether the circuit court exceeded its discretion in granting the injunction. *Id.* An abuse of discretion means a discretion improvidently exercised, or exercised thoughtlessly and without due consideration. *Valley v. Phillips Cty. Election Comm'n*, 357 Ark. 494, 498–99, 183 S.W.3d 557, 560 (2004) (citing *Southern Farm Bureau Cas. Co. v. Daggett*, 354 Ark. 112, 118 S.W.3d 525 (2003); *Ford Motor Co. v. Nuckolls*, 320 Ark. 15, 894 S.W.2d 897 (1995); *Nazarenko v. CTI Trucking Co.,* 313 Ark. 570, 856 S.W.2d 869 (1993)). This standard of review, by design, is deferential to the circuit court's findings supporting the injunction. *Id.* (citing Ark. *State Hwy. Comm'n v. Cutrell,* 263 Ark. 239, 564 S.W.2d 213 (1978)) ("[d]iscretion means that the rules are not inflexible, that there is some leeway in the exercise of sound judgment"). This deference allows the circuit court to continue weighing the ultimate issues without having an appellate court substitute its judgment at an early stage of the underlying litigation. The majority and concurrence fail to give deference to the circuit court and have reached deep into caselaw to support a

finding that not only prejudges the issues below but snuffs out the constitutional rights of fit people to parent their children.

All that is required to support an injunction is "a *reasonable* likelihood of success" on the merits and the threat of irreparable harm. *City of Jacksonville*, 2018 Ark. at 8, 540 S.W.3d at 667 (citing *Ark. Dep't of Hum. Servs. v. Ledgerwood*, 2017 Ark. 308, 530 S.W.3d 336) (emphasis added). The sole question before us is whether the circuit court departed from the rules and principles of equity in making the order and not whether we would have made the same order. *Id.* This analysis should have started with the circuit court's multiple findings in support of both a reasonable probability of success on the merits and irreparable harm.

In the circuit court's thoughtful, eight-page order, it specifically found that there was no statutory authority for the school board to mask children for health purposes and the power to make health regulations for children resided with the executive branch. The circuit court also found that the school board created policies beyond the scope of its statutory power. Historically, a *reasonable* likelihood of success exists when the government is challenged for acting *ultra vires* and there is evidence of the same. Its specific findings supporting irreparable harm included that:

> The parents "absolutely have" a constitutional, liberty "interest in the care and custody of their children under the Arkansas Constitution;"
>
> "The [parents'] liberty interest, in the care and custody of their children, is being infringed upon by the school district, which is a governmental entity, a political subdivision;" and
>
> "The next issue is whether or not the school district…[has] the authority to impose this limitation on the [parents'] constitutional rights. This limitation being, of course, the masking requirement. If the [school district has] that authority,

the [parents] have failed to show irreparable harm, they have failed to show likelihood of success on the merits. If the [school district does] not have that authority, the [parents] have met their burden on both."

A violation of a constitutional right is deemed irreparable harm for purposes of injunctive relief. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Planned Parenthood of Minn., Inc. v. Citizens for Community Action*, 558 F.2d 861, 867 (8th Cir. 1977) (interference with constitutional rights "supports a finding of irreparable injury"). *See also Overstreet v. Lexington–Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) ("denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights"); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (presumption of irreparable injury flows from a violation of constitutional rights)." This was the reasoning the majority and the concurrence should have considered to determine if the circuit court's injunction was equitable. Instead of reviewing the circuit court's order to determine if it was thoughtful and provident, they dive deep into a wide swath of law and analysis to answer a question about constitutional rights before that question was even fully litigated. While it is improper to delve into the merits at this stage in litigation, I refuse to ignore the majority's flawed analysis.

The wearing of a face mask for health purposes has nothing to do with education. Instead, the face-mask policy is a health decision and not an educational one. While a school board is required to "do all things necessary and lawful for the conduct of efficient free public schools in the school district," this does not give the school district the ability to override a fit parent's health decisions for his or her child. *See* Ark. Code Ann. § 6-13-620(11). Neither the power of a parent nor that of the school board to direct a child's

education is absolute and unfettered. *See Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 966 (8th Cir. 2015). To remedy the balanced interests, the majority and the concurrence create power for the school board where it did not previously exist at the expense of the parents.

A school board is created by statute and its power is expressly limited by statute. Ark. Code Ann. § 6-13-620. Additionally, the power to create health regulations rests with the executive branch and the health department—not a school board. Ark. Code Ann. §§ 20-7-109–110. Instead of viewing the board's limited power to provide an efficient and free education, the majority and the concurrence legislate to the board unlimited control of children in public school. Using this broad interpretation of the statute, decisions about a child's health care, medication, and gender identity will fall under the school board's power to mandate in the name of an "efficient" and "free" education.

Equating health decisions for children to uniforms, cosmetics, and playground rules erodes the rightful freedoms of parents while further empowering government control. President Reagan was wise to warn us of the terrifying nature of government regulation done under the guise of "help." Our Constitution and Bill of Rights were written to maximize personal freedom by restraining the government from infringing on our God-given rights. The majority applies the clearly erroneous standard to complicitly empower the government to restrain fit parents' fundamental right to make health-related decisions for their child. The concurrence also endorses limited personal rights in favor of big government because the remedy may be only a few short years away, possibly at the ballot box.

A child is not the mere creature of the State. *Linder v. Linder*, 348 Ark. 322, 342, 72 S.W.3d 841, 851–52 (2002) (citing *Troxel v. Granville*, 530 U.S. 57 (2000)). Parents have a fundamental right under the Fourteenth Amendment in prohibiting state intrusion on parenting their child. *Id*. Neither the state's *parens patriae* power nor its police power may be exercised absent a determination that parental decisions will or may harm the child. *In re Visitation of Troxel*, 1999 WL 1186741, at 3 (U.S. Dec. 10, 1999). Parental rights are undermined if they are only respected by the state when it agrees with the parental decisions that flow from those rights.

The majority and concurrence ignore the circuit court's findings and substitute their own judgment on appeal before the factual issues have even been litigated, ignoring the chilling effects of their holdings to the case on remand. Judicial oversight is meant to be an effective check on election dictatorship and a guardian of civil liberties. People should not have to wait until they cast a ballot to enforce or reclaim those liberties. Fit parents have a fundamental constitutional right to make health-related decisions for their children. A school board is not permitted to infringe on a fit parent's health decisions for his or her child by imposing a mandate that is beyond its authority and also infringes on constitutional rights long recognized by this court and the United States Supreme Court. For these reasons, I respectfully dissent.

*Friday, Eldredge & Clark, LLP*, by: *Marshall S. Ney*, and *Katherine C. Campbell*, for appellants.

*Story Law Firm, PLLC*, by: *Gregory F. Payne* and *Travis W. Story*, for appellees.